Pratt *v.* Atlantic & St. Lawrence Railroad Company.

## COUNTY OF OXFORD.

BENAJAH PRATT, JR., *versus* ATLANTIC AND ST. LAWRENCE RAILROAD COMPANY.

The liability of a railroad company under the statute of 1842, c. 9, § 5, for damages occasioned by fire from its locomotive engines, is not confined either to real or personal estate ; it exists in reference to both.

A railroad company is not liable for damages, by fire from its engines, to cedar posts deposited within a few rods of the track, and intended for use in some other place within a short time.

It is liable, however, for damages to growing timber along its route.

Although growing timber may not have been extensively insured, if at all, it is not unreasonable to suppose that it was intended to be included within the meaning of the statute, and that railroad companies have an insurable interest in such timber along its route. The statute is sufficiently comprehensive to embrace growing trees, and no reason is perceived for excluding them from its operation.

The language of the statute, "along the route," applies to buildings near and adjacent to the railroad *so as to be exposed* to the danger of fire from the engines.

A building separated by a street from that upon which the fire from the engine fell, and growing timber three hundred feet from the track, are "along the route," within the purview of the statute.

The growing trees of A. stood about three hundred feet from the line of the railroad. Fire from the locomotive engine communicated to materials growing and naturally lying between the premises of A. and the railroad, and

Pratt *v.* Atlantic & St. Lawrence Railroad Company.

extended to and damaged A.'s growing timber. A. brought his action against the railroad company for the damages : — *Held,* that the company was liable therefor.

Provisions of a statute absolutely inconsistent with those of another statute subsequently enacted, are ordinarily regarded as repealed ; but statutes cannot be repealed by implication, if the implication does not necessarily follow from the language used.

The simple incorporation into a private statute of a portion of the provisions of a general public statute cannot be treated as a repeal of its other provisions which are omitted therefrom.

The incorporation of such provisions into the charter of a corporation as a part thereof, cannot exonerate the corporation from the duties, liabilities and obligations imposed upon similar corporations by the general statute.

The statute of 1842, c. 9, is remedial in its nature, and applies to corporations which obtained their charters prior to its enactment.

The Atlantic & St. Lawrence Railroad Company is not by its charter (Special Laws of 1845, c. 195,) exempted from the operation of the statute of 1842, c. 9.

Section eighteen of the charter of this company looks only to the future, and has no effect to annul or modify any thing contained in the Act of 1842, c. 9.

AGREED STATEMENT OF FACTS.

This was an action on the case, to recover for damages done to growing timber on plaintiff's land, on the 17th May, 1853, by fire communicated from defendants' locomotive engine.

The writ was dated June 30, 1854.

The title of the plaintiff to the premises was admitted; and that the premises were situated near the line of the railroad of defendants, almost three hundred feet distant therefrom.

It was also admitted, that the plaintiff's loss was sustained by reason of fire communicated by the locomotive engine of defendants', to materials growing and naturally lying on the land between plaintiff's premises and the railroad track; and thence immediately spreading to plaintiff's premises.

The depositions of Ira Crocker, James C. Churchill, Caleb S. Carter and John W. Munger, taken by defendants, together with any others legally taken by either party relating to the subject matter, were made a part of the case, subject to legal objections, and were to be considered by the Court, as they would be by a jury.

If, upon the foregoing statement of facts and the testimony in the case, the Court should be of opinion that the plaintiff was entitled to recover of defendants for the damages sustained by him, the defendants were to be defaulted,—damages to be assessed by any member of the Court. If otherwise, plaintiff to become nonsuit.

*Shepley & Dana*, for plaintiff.

1. The question in this case, is, whether or not a railroad corporation is answerable for damages occasioned by fire communicated by their locomotive engines to wood and timber growing along the route of their road.

It is evident, that unless they are so made answerable, and thus held to the exercise of care, owners of such property along the route are subject to hazard without a compensating benefit; they find their property suddenly put into the hands of others, without their consent. To say they are compensated by increased privileges, is not true, and does not meet the case; for no privilege will be accepted by any man which is accompanied with such constant risk, while his condition is still more intolerable, if this so called privilege is forced upon him against his wishes. Nor can it be said that the owner of such property is recompensed by the damage awarded on the laying out of the road; for, in cases like the present, where the property is not crossed by the track, but still lies so near it as to be constantly subject to the risk, no damage is awarded.

2. The statute of 1842, c. 9, § 5, provides that "when any injury is done to a building *or other property*, of any person or corporation, by fire, communicated by a locomotive engine of any railroad corporation, the said corporation shall be held responsible in damages to the person or corporation so injured." And that this liability may not be too onerous to railroads, the same section provides that they shall have an insurable interest in the property for which they may be so held responsible, in damages, along the route, and may procure insurance thereon in their own behalf.

In *Hart & al.* v. *Western Railroad Co.*, 13 Met. 99, this section (also the law of Massachusetts,) received a judicial

construction, under a state of facts essentially like the one at bar, and the reasoning of the Court applies with equal force here, and that judgment is decisive of this question.

The case of *Chapman* v. *At. & St. Lawrence Railroad Co.*, (Law Reporter, January, 1855, p. 502,) simply decided that articles, deposited by the railroad, and removable at will, are not covered by the provision, and it in no wise conflicts with the case in 13 Met. 99, nor does it weaken the force of the reasoning in that case.

3. It is difficult to conceive, that while railroads are liable for injury occasioned to buildings, growing timber, immovable, impossible to be secured, and, in some seasons of the year, highly inflammable, should not be covered by the term "other property." What does the term include then? Does it mean live stock, or grain, or tools, all which are confined to no locality, and which the company must watch, at its peril, if it would be insured thereon? And does it not cover fixed, permanent growth, which is subject to none of these changes or removals?

The defendants may answer that this extended liability would subject them to too great risk. That matter was considered in 13 Met. 99. They may say, also, they have no insurable interest in such growth. But this is not so. The property is permanent, and their liability a fair risk. The depositions taken amount to nothing. They only show that no one has ever applied for insurance on such property to their knowledge. There is nothing to show that insurance companies would not be willing to take a risk of the kind contemplated by the statute.

4. The feasibility of insurance, however, is not the question; for it is hardly to be supposed that a railroad company, which is declared by the decision in 13 Met. to be liable for injuries to houses along its route, would insure every such house; yet they have an insurable interest. The protection is possible, by the use of reasonable diligence, and that is all that is contemplated.

*P. Barnes*, for defendants.

1. The action is not maintainable under the authority of the recent case of *Chapman* v. *these Defendants*, 39 Maine, 92.

The defendants could not by "reasonable diligence," &c., procure insurance on this property.

For all purposes between such parties as these, growing timber is movable property.   The owner cuts and removes it when he pleases; but insurance contracts are for future definite periods.

2. The company is not liable to such an action as this, and under the express provisions of its charter as compared with R. S., c. 81, and Act of 1842.   Charter § § 1, 12, 18, 11.

TENNEY, J. — This action is for the recovery of damages done to growing timber, on the plaintiff's land, by fire from the defendants' locomotive engine, distant almost three hundred feet from the line of the railroad, communicated to materials growing and naturally lying on the land between the plaintiff's premises and the railroad track, and thence spreading to the land of the plaintiff.

The suit is sought to be maintained under the statute of 1842, c. 9, § 5, which provides, "when any injury is done to a building, or other property of any person, or corporation, by fire communicated by a locomotive engine of any railroad corporation, the said corporation shall be held responsible, in damages, to the person or corporation so injured; and any railroad corporation shall have an insurable interest in the property for which it may be held responsible in damages, along its route, and may procure insurance in its own behalf."

The defendants deny their liability, and in support of their denial, rely upon the case of *Chapman* v. *At. & St. L. Railroad Co.*, 37 Maine, 92.   And it is insisted also by them, that they are not subject to the statute referred to.

The analogy between the cedar posts deposited some few rods from the railroad, and growing trees is not strong.   The former, being considered, in the case cited, as movable property, having no permanent location, but from its nature left

for the purpose of being put to use, in some other place within a very short time, was not insurable property, so that it would be understood as falling within the purview of the statute.

But it cannot be said, with any propriety, that timber growing, and therefore attached to the soil, is movable property, having no permanent location, in the sense in which this language was applied to the cedar posts.

The property for which a railroad company may be liable in damages arising from a loss occasioned by fire communicated from a locomotive engine, is not confined either to real estate or personal property. Insurance may be effected upon either. And when a subject of insurance, the statute will apply, other things existing which will bring the case under its provisions. It will not be denied, that a dwelling-house, situated upon land of the owner, "along the route" of the railroad, is insurable. Merchandize in a store, situated in like manner, for the purpose of being sold in the store in which it is, may be regarded as insurable property.

It is true, that our attention has been brought to no case, where insurance upon growing timber has been effected. But this is not decisive of the question before us, and whether there may be therein an insurable interest. The provisions of the statute are new in this State, and have not, it is believed, for any considerable length of time, made a part of the code of sister States. The necessity for the enactment, was regarded, undoubtedly, as the offspring of the new mode of locomotion by the agency of steam, to secure owners of property, under the increased risks, by the use of fire, in causing transportation of property and passengers. It, therefore, is not unreasonable to suppose, it was designed that certain species of property would fall within its meaning as being insurable, which had not before been extensively insured, if at all.

Growing trees are often to be regarded as more valuable to remain attached to the land on which they stand, than to be removed. They are often cultivated for profit, which their

growth is supposed to promise, or for ornament, by reason of their foliage or otherwise. It cannot be assumed by any means, that they will be removed from the soil sooner than many buildings of permanent construction.

It cannot be doubted, that trees, standing upon the land, are much exposed to destruction from fires which exist in their vicinity; and when these fires, in certain seasons of drought, do commence among even growing timber, their ravages are extensive and ruinous to its owners. When land covered with trees is so situated as to be exposed daily to the fires scattered from the locomotive of a railroad train, experience has convinced those interested in such real estate, that the danger is certainly as great as that which would be incurred by the proprietors of buildings which are similarly situated in relation to a railroad. The statute is sufficiently comprehensive in its terms to embrace growing trees, and no reason is perceived for excluding them from the application which would extend to buildings.

It is very manifest, that a railroad company, under this provision, is not liable for an injury to property, in which it has no insurable interest; and it has such interest in property only as lies *along* its route. Under the word "along," and, as an adverb in Webster's Dictionary, is the following:— "Sax. *and-lang* or *ond-lang*; Fr. *au-long, le-long.* See Long. The Saxons always prefixed *and* or *ond,* and the sense seems to be, by the length, or opposite the length, or in the direction of the length." The first definition given is, "By the length; lengthwise; in a line with the length; as the troops marched *along* the bank of the river, or along the highway." The first definition given of the word "long" is, "Extended, drawn out in a line, or in the direction of length, opposed to "short," and contra-distinguished from "broad" or "wide." Long is a relative term; for a thing may be *long* in respect to one thing, and *short* with respect to another."

It is not deemed reasonable, that the Legislature should limit the liability of railroad corporations to a fire caused by its engine to property upon land immediately adjoining the

, railroad track, when that upon a strip of land a few feet distant, owned by another proprietor, equally exposed, should be excluded.   Under such a statute the security of an owner, where land was bounded upon the track, would be great or small according to the width of his lot, and the security, which would embrace the whole width, would not extend to his grantee, of a part of the same, most remote from the railroad.

The liability of a railroad company was held in Massachusetts, under a statute in all respects similar to the one now under consideration, to extend to a building, separated by a street from the one upon which the fire fell, and which it destroyed, the fire having been communicated from the latter to the former, by ordinary and natural means, and caused its destruction.   And in the same case, it was considered, that the words "along the route," would describe buildings being near and adjacent to the route of the railroad, *so as to be exposed* to the danger of fire from engines, but without limiting, or defining the distance.   *Hart & al.* v. *Western Railroad Corporation*, 13 Met. 99.

It cannot be doubted, that the Legislature designed to afford no greater security to property situated very near the railroad track, than to that which was more remote, provided each was equally exposed.   And whether the distance from the line of the railroad, of the property destroyed, should be sixty or three hundred feet, the peril being the same, is an immaterial question, provided both are "along the route." And we agree with the Court in Massachusetts, that, as the Legislature have prescribed no particular distance beyond which the railroad company is not liable, the definition of these terms must be determined by the answer to the question, Was the property destroyed, so near to the route of the railroad, as to be exposed to the danger of fire from engines? And we do not doubt, that in this case, the growing trees were so near to the railroad as to be comprehended in the protection provided by the statute.

2. The defendants obtained their charter in the year 1845,

c. 195, Special Laws. Therein certain obligations are imposed upon them, which are similar to those which railroad corporations were under by statute of 1842, c. 9; and it is silent as to other duties, liabilities, obligations and restrictions, contained in that chapter, and does not in terms refer thereto; but does expressly confer upon the defendants all the powers and immunities, and makes them subject to all the duties and liabilities, provided and prescribed respecting railroads, in c. 81, R. S., not inconsistent with the express provisions of the charter. Hence, it is contended, that the statute under which this action is brought, is not designed to apply to the defendants.

Provisions in a statute absolutely inconsistent with those of another statute which is subsequent, are ordinarily regarded as repealed, without any repealing clause. But the simple incorporation into a private statute, like that of a railroad charter, of a portion of the provisions which are found in a public and general statute, previously enacted, cannot be treated as a repeal of other provisions which are omitted. Neither can the incorporation of such provisions into a railroad charter, as a part of the latter, exonerate the corporation from duties, liabilities and obligations, imposed upon similar corporations, by a general statute, to which no reference is made in the charter, unless the provisions of the general statute are inconsistent with those of the charter. Statutory enactments cannot be repealed by implication, if the implication does not necessarily follow from the language used.

But the statute under which this suit is sought to be maintained, is one of those remedial acts assigned for the protection of property peculiarly exposed by the introduction of the locomotive engine, operated by the means of fire, and applies to corporations which obtained their charter before its enactment. *Norris* v. *Androscoggin Railroad Company*, 39 Maine, 273. And the same general statute, being in force at the time the defendants obtained their charter, they are affected by its provisions.

The defence has no support from section 18 of the charter,

in which the Legislature had debarred itself from imposing any other or further duties, liabilities or obligations. This provision looks only to the future, and can have no effect upon the statute of 1842, c. 9, to annul or modify any thing therein contained.

According to the agreement of the parties, the defendants are to be defaulted, and the damages are to be assessed by a member of the Court.