## UNION PAC. R'Y CO v. DE BUSK.

1. APPEARANCE — EFFECT — WAIVER OF OBJECTIONS.— Code of Colo-rado, 1877, sections 46, 396, provide that a voluntary appearance of a defendant shall be equivalent to personal service of the summons on him, and that a defendant shall be deemed to appear when he answers, demurs or gives plaintiff written notice of his appear-ance. *Held,* where a defendant objected to the service and return of summons by motion to quash and by plea in abatement, that his subsequently filing an answer to the merits was a waiver of all objections to the summons and return and to the court's jurisdic-tion over his person.

2. CONSTITUTIONAL LAW — FIRES SET BY RAILROADS. — General Stat-utes, page 812, section 2798, which provides that "every railroad corporation operating its line of road, or any part thereof, in this state, shall be liable for all damages by fire that is set out or caused by operating any such line of road, or any part thereof," is consti-tutional.

3. STATUTE REMEDIAL, NOT PENAL.— Such statutes are not penal, but purely remedial in their nature; they apply to corporations which obtained their charters before as well as since their passage; and they should receive a liberal construction such as will justly pro-mote their object.

4. RAILROAD COMPANIES — FIRES SET BY ENGINES.— Evidence that a fire sprang up immediately on the passing of a train, and that there was no fire on the premises before, and no other apparent cause for the fire, is sufficient to warrant the inference that the fire was caused by the train.

12 294
12 310
12 294
13 394
12 294
15 140
12 294
17 200
17 386
12 294
18 609
2a 45
2a 160
2a 399
12 294
19 49
19 332
3a 527
12 294
23 529
12 294
25 504
12 294
q17a 302
17a 492
12 294
s34 254
12 294
37 301
f38 355

*Appeal from District Court of Jefferson County.*

THIS was an action instituted by appellee (plaintiff below) against, appellant (defendant below) to recover the value of a quantity of hay of which plaintiff claimed to be the owner, and which was alleged to have been set on fire and burned by the operation of defendant's locomotive and cars through the premises where said hay was being put up; the fire being communicated from the locomotive to the growing grass, and thence to the hay. The defendant moved to quash the service of the summons on the ground that one Armor, upon whom the same was served, was not an agent of defendant upon whom service could be legally made, supporting said motion by affidavit. This motion was denied. The defendant then filed a plea in abatement, praying that the summons and return thereon be quashed, for the same reasons, substantially, as set forth in the motion. Upon this plea issue was joined and trial had; the court finding in favor of plaintiff, and holding the service sufficient. The defendant then filed its answer to the merits, denying specifically several allegations of fact in said complaint, denying that the grass or hay of the plaintiff was consumed, and denying all damages; also specifically alleging that the injury or damage was not caused in any way or manner by the default or negligence of the defendant. Upon plaintiff's motion the court struck out of the answer all those parts which alleged that plaintiff had not been injured or damaged in any way or manner through the default or negligence of the defendant on the ground that the same was irrelevant, redundant, immaterial and insufficient. The case was then tried upon its merits. At the close of plaintiff's testimony the defendant moved for nonsuit on the grounds that the court had not acquired jurisdiction; that the complaint did not state a cause of action; and that there was no evidence connecting the defendant with the fire. This

motion was denied. No further evidence being offered, the court, at the request of plaintiff, instructed the jury to the effect that if they believed from the evidence that plaintiff was the owner of the hay, and that the same was consumed or injured by fire caused by sparks escaping from defendant's locomotive, as charged in the complaint, then the defendant was liable, and that the jury should assess his damages at the value of the hay consumed. The defendant requested the court to instruct the jury that they should find a verdict in favor of defendant unless they believed from the evidence that the fire testified to occurred through the default or negligence of defendant. The court refused to give this instruction. The plaintiff had a verdict. Defendant's motion for a new trial was overruled, and judgment was entered. The defendant brings this appeal, and assigns for error the several rulings of the court as above stated.

Messrs. TELLER & ORAHOOD and E. R. FRENCH, for appellant.

Mr. J. W. HORNER, for appellee.

MR. JUSTICE ELLIOTT delivered the opinion of the court.

The early decisions in this state have been uniform to the effect that by a general voluntary appearance all objections to the summons and return thereof, and to the jurisdiction of the court over the person of the defendant, are waived; and that the filing of a demurrer or answer to the complaint constitutes such an appearance. *Jones v. Stevens*, 1 Colo. 67; *Creighton v. Kerr*, id. 509; *Wyatt v. Freeman*, 4 Colo. 14; *Smith v. District Court*, id. 235. The code of 1877 contains the following provisions, which have remained unchanged since that date: "Sec. 46. From the time of the service of the summons in a civil action the court shall be deemed to have acquired jurisdiction, and to have control of all subsequent

proceedings. A voluntary appearance of a defendant shall be equivalent to personal service of the summons upon him." "Sec. 396. A defendant shall be deemed to appear in an action when he answers, demurs or gives the plaintiff a written notice of his appearance." In the face of these plain, unqualified provisions the dearth of recent Colorado authorities upon the subject may be readily accounted for.

The decision in *Telegraph Co. v. Conant*, 11 Colo. 111, in no way militates against the foregoing views. In that case the defendant "appeared specially," and moved to quash on the ground that the summons was not served upon the proper agent. The motion being denied, the defendant "made no further appearance," but proceeded by *certiorari* to reverse the judgment for want of jurisdiction. There was no general appearance. The merits of the case were not contested in the court below. The case of *Lyman v. Milton*, 44 Cal. 630, if in conflict with the foregoing, cannot be accepted as authority. In that case it seems the court refused to permit a special appearance on behalf of an infant for the purpose of moving to quash a defective summons. There was no such refusal in this case. On the contrary, the defendant was permitted to attempt — first by motion and then by plea — to quash the return of the writ.

The evidence was sufficient to warrant the inference that the fire was caused by the defendant's passing train, as alleged in the complaint; several witnesses testifying in substance to the springing up of the fire immediately upon the passing of the train, and that there was no fire on the premises before, and no other apparent cause for the fire. From the nature and circumstances of such cases considerable latitude must be allowed in the introduction of testimony, and in the drawing of inferences as to the origin of the fire. 1 Thomp. Neg. 159; *Railway Co. v. Jones*, 9 Colo. 379; *Butcher v. Railroad Co.* 8 Pac. Rep. 174.

By the ancient common law it was held that a person in whose house a fire originated, which afterwards spread to his neighbor's property and destroyed it, was forced to make good the loss, whether the person in whose house the fire originated was negligent in respect to the fire or not; and subsequently it was held that such person would be responsible for fire in his field as well as in his house, on the ground that a person who makes a fire must see that it does no harm, and must answer the damage if it does any. *Sic utere tuo, ut alienum non lœdas.* As late as 1858, in the English court of exchequer, Bramwell, B., used the following language to the jury: "If, to serve his own purposes, a man does a dangerous thing, whether he take precautions or not, and mischief ensues, he must bear the consequences; that running engines which cast forth sparks is a thing intrinsically dangerous; and that if a railway engine is used which, in spite of the utmost care and skill on the part of the company and their servants, is dangerous, the owners must pay for any damage occasioned thereby." But in 1860 it was held, on an appeal of the case to the exchequer chamber, reversing the court of exchequer, that a railway company authorized by the legislature to use locomotive engines is not responsible for damages by fire occasioned by sparks emitted therefrom, provided it has taken every precaution in its power, and adopted every means which science can suggest, to prevent injury from fire, and is not guilty of negligence in the management of the engine. *Vaughan v. Railway Co.* 5 Hurl. & N. 687. See 1 Thomp. Neg. 122 *et seq.*, and notes.

Colorado having adopted the common law of England so far as applicable, etc., and the acts of the British parliament in aid thereof, etc., as they existed prior to the fourth year of James I. (Laws of 1861, p. 35), it would seem as a first impression that our statute making railway companies unconditionally responsible for their fires

is not a change of the law, but declaratory merely.    But for some reason, perhaps because the common law in reference to the liability for damages caused by accidental fires was not considered applicable to our condition as a new country, the uniform current of decisions in America has been, in the absence of statute, to the effect that negligence or misconduct is the gist of the liability of railroad companies for injuries caused by fires escaping from their engines; though the authorities are in hopeless conflict as to which party must assume the burden of proof in such cases.    Generally the burden of proving negligence rests upon the party alleging it.    Hence the rule is held in many states that the plaintiff must offer some proof tending to show negligence on the part of the railroad company, and that the destruction of property by fire does not of itself raise a presumption of negligence.    It is said the plaintiff must go further, and prove some positive act of negligence, or at least something from which it may be inferred — as the defective construction of the engine, the unusual size of the sparks, the improper velocity of the train, or the like.    On the other hand, in nearly if not quite as many states the rule is held that the origin of the fire being proved against the railroad company, the burden devolves upon the company to show that it has used all necessary precautions to avoid doing such mischief.  The reasoning in support of the latter rule may be stated thus: Since the railroad company is not to be held responsible for damages occasioned by fire from its engines, provided it has not been guilty of negligence in the management of its engine, and has taken every precaution in its power, and adopted every means which science can suggest, to prevent injury from fire, therefore it must prove these affirmative acts of diligence in order to bring itself within the terms of the proviso.    It is said with great force that this does not require the company to prove a negative, nor is it an unreasonable burden, since

the company is presumably possessed of the necessary information in regard to the construction and working of its engines, and can readily show, if such be the fact, that it has employed careful and competent servants, and that it has used the most improved appliances to prevent the escape of fire from its engines; while a party litigating against a railroad company can hardly be expected to have the means of showing whether, in the construction of the engine, or in the use of it at the time of the injury, the company was or was not guilty of negligence. Shear. & R. Neg. § 333; 1 Thomp. Neg. 153; *Railroad Co. v. Schultz*, 2 Amer. & Eng. R. Cas. 276.

From the multitude of decisions in cases of this kind it appears that the courts have been extremely liberal in allowing a recovery in favor of the party suffering damage caused by fire from passing trains. Even in cases where the proof of negligence is cast upon the plaintiff, slight circumstances have been held sufficient to sustain the burden. The origin of the fire has generally been held sufficiently established by inferences drawn from slight circumstantial evidence. Recoveries have been allowed where the damages have resulted from fires indirectly communicated; and, as a general rule, the courts have refused to restrict the recovery to those cases where the fire has been communicated directly from the engine to the property injured. *Hart v. Railroad Corp.* 13 Metc. 99; *Pratt v. Railroad Co.* 42 Me. 579; *Lyman v. Railroad Corp.* 4 Cush. 288; *Pierce v. Railroad Co.* 105 Mass. 199. In this condition of the law, as announced by the decisions of the courts, it is not surprising that some of the states have sought by legislation to further regulate the liability of railroad companies for damages resulting from fires caused by the operation of their trains. In 1874 our territorial legislature enacted the following: "That every railroad corporation operating its line of road, or any part thereof, in this state shall be liable for all damages by fire that is set out or caused

by operating any such line of road, or any part thereof, and such damages may be recovered by the party damaged by the proper action in any court of competent jurisdiction." Gen. St. Colo. p. 812, § 2798. Various objections have been urged against the constitutionality of acts of this kind. For example, it has been claimed (1) that they are the means of depriving a railroad company of its property "without due process of law;" (2) that they deny to railroad corporations "the equal protection of the laws;" (3) that they are acts "impairing the obligations of contracts;" (4) that they interfere with the powers of congress to "regulate commerce among the several states."

Let us consider the reasoning of some of the principal authorities relied upon as denying, as well as those asserting, the constitutionality of such acts. The legislature of Alabama passed an act providing that railroad companies in that state should be liable for all damages to live-stock or cattle of any kind caused by their locomotive or railroad cars. The supreme court of that state expressed its opinion in respect to said act as follows: "Due process of law implies the right of the person affected thereby to be present before the tribunal which pronounces judgment upon the question of life, liberty or property, in its most comprehensive sense, to be heard, by testimony or otherwise, and to have the right of controverting, by proof, every material fact which bears on the question of right in the matter involved. If any question of fact or liability be conclusively presumed against him, this is not due process of law. * * * It is within the power of legislation to declare that certain proofs shall be *prima facie* evidence of specified facts. But at the same time we decided that the legislature could not constitutionally ordain that such proofs should be conclusive evidence of material facts in controversy. The first is a mere rule of evidence. The last has been characterized as 'a confiscation of property.' * * * The

statute under discussion dispenses with all proof of the
most material element of the wrong it seeks to redress.
It declares that the railroad corporation shall make repa-
ration for an injury inflicted in the authorized prosecu-
tion of its lawful business, without a semblance of fault,
negligence or want of skill in its employees — an injury
which no human prudence or foresight could prevent;
and yet the statute will not allow the railroad to excul-
pate itself by proof of the highest qualifications and most
watchful vigilance.     This falls short of due process of
law." *Zeigler v. Railroad Co.* 58 Ala. 599.     The opin-
ion of the Alabama court above referred to, though not
based upon a statute relating to damages by fire, is nev-
ertheless an authority bearing legitimately upon the ques-
tion under consideration.     Upon careful examination,
however, we cannot follow it.     We think the language
altogether too broad and sweeping.     Such reasoning
would compel us to declare certain sections of the statute
of frauds, as well as other conclusive presumptions of
law, unconstitutional.

"It is a principle of the common law," says the Iowa
supreme court in an opinion hereinafter cited, "that the
owner of vicious domestic animals shall not be liable for
the injuries they inflict, until he has had knowledge of
their vicious propensities, and neglects to restrain them.
Yet it would scarcely be claimed that an act of the legis-
lature making the owner liable for such injuries, with-
out such knowledge, would be unconstitutional.     That
would be a case in which one of two equally innocent
persons must suffer, and it certainly would be as compe-
tent for the legislature to declare that the loss shall be
borne by the owner of the animal as it now is for the
common law to visit the loss on the person injured."

The constitution of California provides, in substance,
that the property of all persons, except railroad and other
*quasi* public corporations, shall be assessed for taxation
at the value thereof, less the amount of any mortgage

incumbrance thereon, but that the franchise, roadway, road-bed, rails and rolling stock of all railroads operated in more than one county shall be assessed at their actual value, without deduction for any mortgages on the property. In an action to recover the taxes from a railroad corporation, it was held by the United States circuit court, Field and Sawyer, JJ., that railroad corporations were persons within the meaning of the fourteenth amendment to the constitution of the United States, and that the foregoing provision of the constitution of California was in conflict with said amendment in that it deprived railroad corporations of "the equal protection of the laws," by imposing upon them unequal taxation. *County of San Mateo v. Railroad Co.* 13 Fed. Rep. 722; 8 Am. & Eng. R. R. Cas. p. 1.

. In determining the constitutionality of statutes it must be borne in mind that every act which has received the sanction of the general assembly is to be considered constitutional, unless the contrary appears beyond reasonable doubt. The precise point of conflict between the statute and the constitution — state or national — must appear plain, palpable and inevitable, or else the act of the general assembly must be held to prevail. It is clear that the state of California, by the provisions of the constitution referred to, expressly discriminated in favor of private individuals and against railroad corporations in the matter of assessment and taxation, and thus attempted to deprive railroad corporations of "the equal protection of the laws" guarantied by the constitution of the United States. There could be no doubt as to the meaning or effect of the California constitution as to that particular matter. But no discrimination was either expressed or intended in favor of private individuals or against railroad corporations by our statute making them liable for damages by fire caused by the operation of their trains. The object of the statute was to give an adequate remedy to those who should suffer damages

from fire caused by the operation of locomotive engines by the dangerous agency of steam. The object of the act was not to punish railroad corporations, but was to declare upon whom the loss must fall in case damage by fire should ensue by the operations of railroads. In the act under consideration the legislature evidently used the words "railroad corporation" in their popular sense, as denoting any party engaged in the operation of railroads. It was a matter of common knowledge then, as it has been ever since, and is now, that railroads were operated only through the agency of corporations. Hence there was in fact no chance for discrimination — no chance to deprive any one of "the equal protection of the laws"— by declaring a liability against "railroad corporations" only, since they only were thus engaged in operating railroads.

We have seen that the word "persons" was held to be comprehensive enough to include corporations, and thus the constitution of California was declared to be in conflict with the constitution of the United States. In passing upon the constitutionality of this act of our territorial legislature, we think the words "railroad corporations" should be construed to mean any body, company or association of persons, whether technically incorporated or not, engaged in the operation of railroads. We feel bound to go thus far in construing the language of the act: *first*, for the reason that such was obviously the meaning intended by the legislature; and, *second*, to avoid the necessity of declaring the act unconstitutional. Whenever a word or phrase of an act is used in more senses than one, that sense is always to be preferred which will sustain and give effect to the act, rather than the sense which would render the act unconstitutional and void.

The legislature of Michigan granted a charter to a plank-road company, subject to alteration, amendment or repeal after thirty years, but not before, "unless it

shall be made to appear to the legislature that there has been a violation by the company of some of the provisions of this act." In less than thirty years the legislature passed an act, without preamble or recital, to repeal the charter. In a case brought to test the validity of the repealing act, Mr. Justice Cooley used the following language: "The charter of a private corporation is to be re garded as a contract whose provisions are binding upon the state, and cannot be set aside at the will of the legislature. Such a charter is a law, but it is also something more than a law, in that it contains stipulations which are terms of compact between the state as the one party and the corporators as the other, which neither party is at liberty to disregard or repudiate, and which are as much removed from the modifying and controlling power of legislation as would be the contracts of private parties." The opinion of Judge Cooley, holding the repealing act unconstitutional, was not based upon the proposition that additional burdens or liabilities had been imposed upon the corporation by a subsequent statute, but the holding was that the determination of the question whether or not the company had violated its charter was a judicial and not a legislative act, and that the company had a right to a trial before its charter could be rightfully forfeited. *Plank-road Co. v. Woodhull*, 25 Mich. 99. The same distinguished jurist and eminent author in his work on Constitutional Limitations (pp. 710–712, 5th ed.) says: "The occasions to consider the clause of the constitution of the United States which forbids the states passing any laws impairing the obligation of contracts have been frequent and varied; and it has been held without dissent that this clause does not so far remove from state control the rights and properties which depend for their existence or enforcement upon contracts as to relieve them from the operation of such general regulations for the good government of the state and the protection of the rights of individuals as may be deemed important. * * *

Although these charters are to be regarded as contracts, and the rights assured by them are inviolable, it does not follow that these rights are at once, by force of the charter-contract, removed from the sphere of state regulation, and that the charter implies an undertaking on the part of the state that in the same way in which their exercise is permissible at first, and under the regulations then existing, and those only, may the corporators continue to exercise their rights while the artificial existence continues. The obligation of the contract by no means extends so far; but, on the contrary, the rights and privileges which come into existence under it are placed upon the same footing with other legal rights and privileges of the citizen, and subject in like manner to proper rules for their due regulation, protection and enjoyment."

The statute of New Hampshire is as follows: "The proprietors of every railroad shall be liable for all damages which shall accrue to any person or property by fire or steam from any locomotive or other engine on such road." In an action brought upon this statute the objection was raised that it interfered with the power of congress to "regulate commerce among the several states." The question was elaborately presented in the briefs of counsel; but the supreme court, without discussing the question, held that the objection could not be maintained; that federal authority was against it; and rendered judgment sustaining the statute. *Smith v. Railroad,* 63 N. H. 25. As this particular point has not been urged in the case at bar, we shall not further consider it in this opinion.

Maine and Massachusetts have statutes similar to our own, which have been upheld by a long line of decisions. Chief Justice Shaw, delivering the opinion of the court in *Hart v. Railroad Co., supra,* used the following language: "We consider this to be a statute purely remedial and not penal. Railroad companies acquire large profits by their business. But their business is of such a

nature as necessarily to expose the property of others to danger; and yet, on account of the great accommodation and advantage to the public, companies are authorized by law to maintain them, dangerous though they are, and so they cannot be regarded as a nuisance. The manifest intent and design of this statute, we think, and its legal effect are, upon the considerations stated, to afford some indemnity against this risk to those who are exposed to it, and to throw the responsibility upon those who are thus authorized to use a somewhat dangerous apparatus and who realize a profit from it."

In 1873 the state of Iowa adopted a statute almost identical with our own. It provided "that any corporation operating a railway shall be liable for all damages by fire that is set out or caused by the operating of any such railway," etc. In an action brought thereunder the defense was made that the act was unconstitutional, as "impairing the obligations of contracts." Upon this defense the supreme court said: "Any legislation which deprives the defendant of the right to operate its road would clearly be an infraction of contract and unconstitutional. But there is no implied contract between a state and a corporation that there shall be no change in the laws existing at the time of the incorporation which shall render the use of a franchise more burdensome or less lucrative, any more than there is between the state and an individual that the laws existing at the time of the acquisition of property shall remain perpetually in force. An individual may turn all his real estate into money for the purpose of making loans when the legal rate of interest is ten per cent., yet there can be no doubt that a legislature could afterwards reduce the legal rate to six per cent., thus materially lessening his profits and affecting the value of his property. And the same thing can be done with respect to a corporation. * * * It took its charter subject to the general laws, and of course subject to such changes as shall be rightfully made in

such laws. The legislature surely did not guaranty to the corporation that there should be no change in the laws. * * * It is true the generally received doctrine is that for a lawful and reasonably careful use of property the owner shall not be answerable in damages; but this is simply a principle of a common law. It is not so wrought into the idea of property, nor is it so hedged about by the constitution, that the legislature may not change it. * * * The statute simply recognizes the doctrine that the use of a locomotive engine is the employment of a dangerous force; that sometimes, notwithstanding the exercise of the highest care and diligence, it will emit sparks and cause destructive conflagrations; that when this occurs loss must fall upon one of two innocent parties; that heretofore that loss has been borne by the owner of the property injured; hereafter it shall be borne by the owner of the property causing the injury." *Rodemacher v. Railway Co.* 41 Iowa, 297.

We have thus noticed, at considerable length, some of the principal decisions bearing upon the question of the constitutional validity of statutes similar to our own. It will be observed that the decisions relied upon as denying the constitutionality of such acts relate to statutes upon subjects other than damages caused by fire. We are not aware that the supreme court of any state having an act like that of ours has declared the same unconstitutional. We come to the conclusion that such statutes are not penal, but purely remedial in their nature; that they apply to corporations which obtained their charters before as well as since their passage; that they should receive from the courts a reasonable and liberal interpretation and construction, such as will justly promote their object. By many courts the warrant for their enactment is ascribed to the police power of the state; but we have not found it necessary to attempt a particular classification in order to sustain their validity. Statutes practically identical with our own were passed, construed and

upheld by the decisions of several states for many years before ours was enacted; and we see no reason why Colorado should take the lead in declaring such acts unconstitutional.   *Ross v. Railroad Co.* 6 Allen, 90; *Pratt v. Railroad Co.* 42 Me. 579; *Thorpe v. Railroad Co.* 27 Vt. 140; *Railway Co. v. Henderson,* 10 Colo. 1.

Undoubtedly the enforcement of such acts will stimulate railroad companies to the greatest diligence to prevent fires from the operation of their roads.   If they are found to bear too severely upon railroad companies, the legislature may be relied upon to give relief by modification or repeal.   A hundred years ago when a man's house burned without any negligence on his part,— a case of pure accident,— and the fire caused the burning of his neighbor's house, it was deemed a harsh law that required him to make good his neighbor's loss as well as to bear his own; and so resort was had to an act of parliament to remedy the supposed hardship.   14 Geo. III. ch. 78. The adoption of the statute in this and other states, making railroad companies liable for damages by fire caused by the operation of their locomotive engines, is but the re-enactment *pro tanto* of the ancient common law for the better protection of property exposed to such unusual dangers.   Such matters are peculiarly within the control of the local legislatures, and such laws may be enacted, changed or repealed to suit the varied conditions and circumstances of the people.   Human laws at best are largely experimental, and especially in all free states we may expect frequent changes as the wants and necessities of the people may require, or as their experience and judgment may suggest.   The judgment of the district court is affirmed.   Judgment affirmed.

HELM, C. J.   I concur in the conclusion that the statute under consideration is not obnoxious to the constitutional objections presented, and that therefore the judgment should be affirmed.

*Affirmed.*