Wadsworth, Plaintiff in Error, v. The Union Pacific Ry. Co., Defendant in Error.

1. Intention governs.

Where the court announced that a new trial should be allowed and the plaintiff then declared that he elected to stand by his case as made, and thereupon the court dismissed the action; *held*, that the circumstances showed that all parties intended to treat the case as though the court had dismissed the action or granted a nonsuit on the ground that plaintiff had failed to " prove a sufficient case for the jury."

2. Substance, not Form.

The code of civil procedure contemplates that the substance, and not the mere form, of judicial proceedings shall be regarded in determining the rights of the parties.

3. Question of Fact.

Where the evidence is conflicting, or of such a character that different conclusions may be reasonably drawn therefrom, the case presents a question of fact for the jury under proper instructions.

4. Question of Law.

Though the dismissal of an action may not be warranted on the ground stated in the judgment order, yet if the record discloses other grounds which, as a matter of law, show that plaintiff was not entitled in any event to recover in the action, a judgment of dismissal may be upheld.

5. Stock-killing Act of 1885.

Under the stock-killing act as amended in 1885, before a person could claim that a railway company owed him any duty in respect to fencing its railway, it was necessary for him to allege that he was the owner or holder of land adjacent to such railway, that he had requested the railway company to fence its line, put in cattle guards and gateways. And moreover, according to said act, the railway company could not, by complying with such request, exempt itself from the unconditional liability otherwise imposed, except as against the party making the request.

6. The Very Point decided.

It is not every remark in a judicial opinion that amounts to a judicial decision. General expressions in every opinion are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected but ought not to control the judgment in a subsequent suit when the very point is presented for decision.

7. CONSTITUTIONALITY OF LEGISLATIVE ACTS.

A legislative act within the sphere of legislative power and not an encroachment upon the province of some other department of the government, will be upheld unless clearly in conflict with some provision of the constitution of the state or nation, or in violation of some private right thereby secured.

8. STATUTE UNCONSTITUTIONAL.

By the Stock-killing Statute of 1885, sections 13 and 14, a railway company might be denied " the equal protection of the laws," and deprived of its property " without due process of law." Such a statute is unconstitutional.

9. DEPENDENT STATUTORY PROVISIONS.

Where the sections of a statute must be construed together as dependent, and not as independent provisions, the invalidity of one part invalidates other parts.

*Error to the District Court of Park County.*

ACTION against a railway company for the killing of a horse.

This action was founded upon chapter 93, General Statutes 1883, as amended by the Acts of 1885. Section 13 and amended sections 14 and 15 are as follows :

" Sec. 13. That every railroad or railway corporation or company operating any line of railroad or railway or any branch thereof, within the limits of this state, which shall damage or kill any horse, mare, gelding, filly, jack, jenny or mule, or any cow, heifer, bull, ox, steer or calf, or any other domestic animal, by running any engine or engines, car or cars, over or against any such animal, shall be liable to the owner of such animal for the damage  sustained by such owner by reason thereof."

" Sec. 14. If the owner of any animal or animals so killed, or his or her authorized agent, shall make affidavit before some officer authorized to administer oaths, that he or she was the owner, or authorized agent of the owner, of the recorded brand found upon the animal or animals so killed or damaged, at the time of such killing or damaging, and such person shall, within six months after such killing or damaging, deliver such affidavit to the agent, or any officer, of such company or corporation, together with a certificate of his or her mark or brand,

under official seal of any officer authorized by law to record such mark or brands, or shall make affidavit that the animal killed or damaged, as aforesaid, had no recorded mark or brand, and that he or she is the owner of such animal, describing it, and the corporation or company shall pay to such person delivering such affidavit and certificate, or such affidavit last aforesaid, as follows:

" SCHEDULE.

" For American sheep, each, two dollars and fifty cents ($2.50).

" For Mexican sheep and goats, one dollar and fifty cents ($1.50).

" For Texas cattle, yearlings, twelve dollars ($12.00).

" For Texas cattle, two years old, seventeen dollars. ($17.00).

" For Texas cattle, three years old, steers and cows, twenty dollars ($20.00).

" For Texas cattle, four years old steers or over, twenty-five dollars ($25.00).

" For American yearlings, fifteen dollars ($15.00).

" For American two years old, twenty dollars ($20.00).

" For American three years old, steers and cows of all ages, twenty-eight dollars ($28.00).

" For American four years old steers and over, thirty-four dollars ($34.00).

" For calves, ten dollars ($10.00).

" The above price, when paid, shall be payment in full; all Texas and Mexican cattle shall be considered as Texas cattle, and half-bloods shall be classed as American cattle; thoroughbred cattle, milch cows, high-grade American cattle and grade bulls shall be paid for at their cash value; thoroughbred sheep shall be paid for at their cash value; horses, mules and asses shall be paid for at their cash value; *Provided*, that no railroad company shall at any time be required to pay more than the market value of any animal killed or damaged, except as hereinafter provided. In all cases where such railroad company or corporation shall kill any of the

stock mentioned in this act, and for which no price or sum is fixed, the owner or agent of such stock shall, after the filing, as aforesaid, of an affidavit and certificate of brand, or affidavit of ownership, which affidavit shall contain a statement of class, grade and value of such animal or animals, select some disinterested freeholder of the county where such killing took place, and shall notify such company or corporation of said selection, and such company or corporation shall, within three days thereafter select some suitable person to act with person so selected, and the two so selected shall select a third, and the three so selected shall, without delay, proceed to appraise the value of the stock so killed or damaged, a majority of which three appraisers shall be sufficient to determine the same, and shall certify, under oath, such appraisement to an agent or superintendent of such company or corporation. In case such railroad or corporation shall refuse or neglect to appoint such appraiser, it shall be the duty of the justice of the peace nearest to the place where such stock was so killed or damaged, to select three disinterested persons as appraisers, and administer to them an oath to honestly appraise the value of such stock, which appraisers shall, without delay, appraise and forward to such justice the result of such appraisement, which juctice shall, within ten days thereafter, forward to an agent or superintendent of such railroad or corporation, a certificate of the result of such appraisement and the costs thereof; and such railroad or corporation shall, within thirty days after the receipt of such certificate, pay to the owner of the stock so killed or damaged, or to his or her authorized agent, the amount of such appraisement, together with all the costs, as aforesaid; and in all cases where the value of such stock is established by this act, such company or corporation shall pay for such stock within thirty days after the delivery of the affidavit and certificate of ownership of brand, or affidavit, of ownership of said stock, and if any such company shall so fail to pay for such stock within thirty days after the delivery of such affidavit and certificate, such company shall be

liable for double the value the appraised or schedule value of any such animal or animals, together with reasonable attorney's fees, to be allowed by the court; and all persons selected or appointed under this section shall receive the sum of one dollar, to be paid by said railroad company or corporation, as hereinbefore provided; *Provided*, that any railroad company having fenced its line of road, or any part thereof, or who may hereafter fence its road or any part thereof, with a good and lawful fence, and put in good and sufficient cattle guards, and have put in gateways upon and across their said railroad, at the request of persons holding or owning land adjacent to said railroad, for the private use and accommodation of said adjacent owners or holders of land; said railroad company shall not be held liable for the killing or injury of any stock getting through said gateways, belonging to said party at whose request and for whose accommodation said gateway was made, unless such killing or injury was occasioned by the fault or negligence of said railroad company or its employees:"

" Sec. 15. Every railroad company shall keep a book at the county seat of each county through which their road runs; *Provided*, that said road runs, or passes, through the county seat. If such railroad does not pass through the county seat, then such book shall be kept at the principal town in the county through which it passes; and it is hereby made the duty of the said company to cause to be entered in said book, within fifteen days after the killing of any animal, a description, as nearly as may be, of such animal, its color, age, marks and brands, and shall keep said book subject to the inspection of persons claiming to have had animals killed. Should any company fail to keep said book, or to file such notice, in the manner herein provided, or to enter therein such description of any animal killed, for a period of fifteen days thereafter, such company shall be liable to the owner of such animal to an amount twice the full value thereof." General Statutes 1883, p. 814; Session Laws 1885, pp. 304 and 338.

Wadsworth was plaintiff below.   The Union Pacific Railway Company was defendant.   At the October term 1887, the cause was tried by a jury and verdict rendered in plaintiff's favor.   A motion for a new trial was interposed by defendant, and at a subsequent term the following proceedings were had and entered of record:

" And afterwards, and on the 25th day of April, 1888, the same being one of the regular juridical days of the April, 1888, term of the said court, the motion for new trial aforesaid having been continued for further hearing to said last-named term, and having been argued in chambers meanwhile in vacation, and now coming on for final hearing and determination, and the court, being of opinion that said motion should be allowed, but plaintiff electing to stand by his case as made, doth order and adjudge that, there being no evidence that defendant's engine or cars ran over or against the horse of plaintiff herein in question, said animal, upon the contrary, appearing to have run into or against the moving train of defendant's cars, this action of plaintiff, under the statutes counted upon therein, does not lie, and the same, the evidence and the verdict herein notwithstanding, is dismissed at the costs of the plaintiff."

The plaintiff seeks a reversal of this judgment by writ of error.

Messrs. BAILEY & WILKIN, for plaintiff in error.

Messrs. TELLER & ORAHOOD and Mr. C. M. KENDALL, for defendant in error.

MR. JUSTICE ELLIOTT delivered the opinion of the court.

The dismissal of the action as shown by the record is assigned for error.

1. The dismissal was somewhat irregular; but it is not difficult to understand its meaning.   The cause had been tried by jury resulting in a verdict in plaintiff's favor, find-

ing that the value of the horse killed was $200, and assessing plaintiff's damages at $400 on each of the two causes of action.

Upon consideration of defendant's motion for a new trial, the court was of opinion that it should be allowed, and so announced its conclusion. Thereupon plaintiff declared that he elected to stand by his case as already made, and the district court then and there dismissed the action at plaintiff's costs. The declaration of plaintiff was equivalent to saying that he could not prove any better case, and that he desired to obviate the necessity for another trial.

The bringing of the whole record to this court for review, including the bill of exceptions containing " all the testimony offered, given or received on the trial," clearly indicates that the intention of the parties was to treat the action of the court as though the court had dismissed the action or granted a nonsuit on the ground that plaintiff had failed to " prove a sufficient case for the jury." That such was the understanding and intention of plaintiff as well as the defendant, is confirmed by the fact that the assignments of error and argument of counsel in this court extend to the conclusions of the trial court upon the evidence, the pleadings, and the statutes upon which the action is founded.

2. The code of civil procedure contemplates that the substance and not the mere form of judicial proceedings shall be regarded in determining the rights of parties. Hence, we shall review this cause according to the intention of the parties, as above stated, since it is obvious that the ends of justice will be thereby accomplished. Code, § 78, also § 443; *D. & R. G. Ry. Co. v. Chandler*, 8 Colo. 376 ; *Town of Idaho Springs v. Filteau*, 10 Colo. 105.

3. Upon a careful examination of the evidence, we are of the opinion that the court would not have been justified at the close of the evidence in dismissing the action, or in granting a nonsuit on the ground that there was no evidence tending to prove that defendant's engine or cars ran over or against the plaintiff's horse as stated in the finding of the court. The

evidence on that phase of the case was somewhat conflicting, or of such a character that different conclusions might have been reasonably drawn therefrom; and so the evidence did not present a question of law for the court, but one of fact for the jury under proper instructions. 2 Thompson on Trials, § 2242 *et seq.* ; *Lord v. Pueblo S. & R. Co.*, 12 Colo. 394 ; *Denny v. Williams*, 5 Allen, 1–5.

4. But it is contended that, though the grounds for dismissing the action, as stated in the court's finding, are not sufficient in law, yet the judgment of dismissal should be upheld, since the record discloses other facts which, as a matter of law, show that plaintiff was not entitled in any event to recover in the action.

5. The complaint contains two causes of action. Each count is founded upon certain provisions of the statute relating to stock killed by the operation of railroads. The killing occurred in June, 1886. Hence, we must consider the law as it existed at that time. See Gen. Stats. 1883, chap. 93, § 2804 *et seq.*; also, acts amendatory thereof, Session Laws 1885, pp. 304, 338.

Neither count of the complaint alleges any negligence on the part of the defendant company in respect to the killing of plaintiff's horse. Prior to the acts of 1885, above cited, it was provided by statute that any railroad company operating its road within this state which should damage or kill any domestic animal by running any of its engines or cars over or against such animal should be liable to the owner of such animal for the damages thereby occasioned. The statute contained a fixed schedule of prices to be paid for certain kinds of animals so killed; it also provided for an appraisement of the value of animals for which no schedule price was fixed ; but the appraisement was required to be made without any trial in court; and no proof of negligence on the part of the railway company was required in order to establish its liability.

By the act of 1885 an amendment to section 14 was added relating to fences, cattle guards and gateways, by which it

was provided that under certain circumstances a railroad company should not be held liable for the killing or injury of any stock, unless such killing or injury was occasioned by the fault or negligence of the company or its employees. This peculiar proviso was again amended in 1891 (Session Laws, p. 281); but the amendment was too late to affect this case.

The first count of the complaint contains an averment to the effect *that defendant's railway line at the place where plaintiff's horse was killed was not then and there fenced with a good and lawful fence or with any fence whatever;* also, a further averment, that " said railway line at the point thereon of said killing was not fenced as by said statute advised." These averments were not sufficient under the act of 1885. According to the terms of that act, before plaintiff could claim that the defendant company owed him any duty in respect to fencing its railway, it was necessary for him to allege that he was the owner or holder of land adjacent to such railway, that he had requested defendant to fence its railroad, put in cattle guards and gateways, and that his horse was killed by reason of defendant's neglect to comply with such request. The complaint does not contain such allegations. Moreover, according to the strict terms of the proviso, the company could not, even by fencing, putting in cattle guards and gateways, exempt itself from the unconditional liability otherwise imposed by the statute, except as against the party requesting the gateway to be made.

From the foregoing it follows, that in order to warrant a recovery for plaintiff under the first count of his complaint, as the statute existed when the first alleged cause of action arose, it must be held, unconditionally, that if any railroad company operating its road in this state should damage or kill a domestic animal by running its engines or cars over or against such animal, the railroad company would be liable therefor, irrespective of any act of negligence on the part of such company. If such statute were valid, then, according to its literal terms, plaintiff's right to recover must be upheld.

6. Counsel for plaintiff rely upon the case of *U. P. Ry. Co. v. De Busk*, 12 Colo. 294, as sustaining the stock-killing statute as it existed under the act of 1885. In that case a statute declaring that every railroad company shall be liable for all damages by fire that is set out or caused by operating its road in this state, was upheld as constitutional, the court holding that " such statutes are not penal, but purely remedial in their nature," and that the liability thus declared " was but the re-enactment, *pro tanto*, of the ancient common law, for the better protection of property exposed to such unusual dangers." The conclusion in the De Busk case was sustained by numerous decisions by courts of last resort in other states having fire statutes similar to our own. As early as 1847, Chief Justice Shaw declared that the design as well as the legal effect of such a statute was to afford *indemnity* to those suffering damage from fire caused by the use of a dangerous apparatus. This same view was again expressed in 1863 by Chief Justice Bigelow, as follows :

" It is not a penal statute, but purely remedial in its nature ; and it is to be interpreted fairly and liberally, so as to secure to parties injured an indemnity from those who reap the advantages and profits arising from the use of a dangerous mode of locomotion, by means of which buildings and other property are destroyed." *Hart v. Railroad Co.*, 13 Metc. 99 ; *Lyman v. B. & W. R. R. Co.*, 4 Cush. 288 ; *Pratt v. Railroad Co.*, 42 Me. 579 ; *Smith v. Railroad Co.*, 63 N. H. 25 ; *Ross v. Railroad Co.*, 6 Allen, 90 ; *Rodemacher v. Railway Co.*, 41 Iowa, 297.

It is true, that in the *De Busk case* various decisions relating to stock-killing statutes were referred to and commented upon by way of analogy or illustration. Such references and comments are not to be taken as sustaining the validity of the stock-killing statute ; the question of the validity of such statute was not then before the court. As was said in *Johnson v. Bailey*, 17 Colo. 69 : " It is not every remark in a judicial opinion that amounts to a judicial decision." In

*Cohens v. Virginia,* 6 Wheaton, 97, Chief Justice Marshall said :

" It is a maxim not to be disregarded that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision. The reason of this maxim is obvious. The question actually before the court is investigated with care, and considered in its full extent. Other principles which may serve to illustrate it, are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated."

The decision in *Railroad Company v. Henderson,* 10 Colo. 1, cannot be considered as upholding the constitutionality of the stock-killing statute. True, it was remarked in the opinion in that case that the statute was a cumulative remedy ; but the real question decided was that the statute did not repeal or suspend the common law action for damages occasioned by negligence, and the judgment of the lower court was affirmed upon the ground that the evidence fairly tended to establish negligence. The first point of the syllabus in the Henderson case was therefore unwarranted by the decision. In *Railroad Co. v. Lujan,* 6 Colo. 338, the decision turned upon a question of pleading. It does not appear that the constitutionality of the stock-killing statute was challenged, either in the Lujan case or the Henderson case. The maxim, *stare decisis,* therefore, cannot be fairly invoked as sustaining the constitutionality of such statute.

The statute making every railroad company unconditionally liable in case it shall kill or damage a domestic animal by running its trains over or against such animal, stands on a footing quite different from the fire statute. Fire is a dangerous element, and according to the ancient common law the rule was, as stated in the *De Busk case,* that " a person who makes a fire must see that it does no harm, and must answer for the damage, if it does any." In the case of do-

mestic animals the general rule at common law was, that if such animals trespassed upon the lands of others'the owner was liable in damages, unless he could show that the lands should have been fenced. Besides, the rule at common law was that a party running coaches or other vehicles could be held liable for damages caused by such vehicles on the ground of negligence or willful misconduct, but not when the damage was the result of pure accident.

Since by the progress of invention vehicles propelled by steam and electricity have come into use as a means of transporting persons and property, the common law rule of liability on the ground of negligence has been applied to the operation of such vehicles, though a higher degree of diligence has been required on account of the greater liability to injury arising from the use of a more dangerous motive power. But we are not aware that it has ever been held, *as a common law rule*, that steam or electric railway companies, lawfully operating their trains, are liable for damages thereby occasioned, in the absence of negligence. By virtue of statutes, however, railway companies have frequently been required to provide additional safeguards against accidents and injuries to persons and property from the operation of their trains; these requirements have been upheld as valid police regulations; and omissions to comply therewith have been held to constitute sufficient ground of liability. For example: It has been held that a statute requiring a railway company to fence its line of railway is a valid police regulation; and in states where such statutes have been adopted, railway companies have been held liable for injuries done to domestic animals where the injury is shown to have been occasioned by the neglect of the company to fence its railway. The element of *neglect* is the basis of liability in such cases. Perhaps the same rule may apply where the statute gives railway companies the option of fencing their roads on pain of being held liable for injuries caused to animals through *neglect* to avail themselves of the opportunity of fencing. *Hayes v. M. C. R. R. Co.*, 111 U. S. 228; *Mo. Pacific Ry.*

*Co. v. Humes*, 115 U. S. 512; *Cairo & St. Louis R. R. Co. v. Peoples*, 92 Ills. 97; *Wilder v. Me. Central R. R. Co.*, 65 Me. 332; *Barnett v. Atlantic & Pacific R. R. Co.*, 68 Mo. 56; *Thorpe v. Railroad Co.*, 27 Vt. 140; *Dacres v. Oregon R. & N. Co.*, 1 Wash. St. 525.

7. It is earnestly contended that the stock-killing statute as it existed under the act of 1885 was unconstitutional.

The power of the courts to declare legislative acts unconstitutional should be exercised with that delicacy and consideration which are always due to a co-ordinate department of the government. So long as a legislative act is within the sphere of legislative power, that is, so long as it is not an encroachment upon the province of some other department of the government, it will be upheld, unless clearly in conflict with some provision of the constitution of the state or nation, or in violation of some private right thereby secured. The conflict between the legislative act and some specific provision of the fundamental law must, in general, be clearly apparent, or the act will not be deemed unconstitutional. That a statute may, in the opinion of the court, be against the spirit of the constitution, or against the policy of the government, is not sufficient to warrant the court in declaring it unconstitutional. The courts cannot arrest unwise or oppressive acts of legislation so long as such acts are within constitutional bounds. Cooley on Constitutional Limitations (6th ed.), chap. 7.

8. Stock-killing statutes similar to our own have been considered and held unconstitutional in several states. The court of appeals of this state has also expressed a like opinion. These decisions have been placed upon various grounds.

The statute in question was obviously intended to be remedial as well as penal. Sutherland on Stats., secs. 208, 359. The statute cannot be sustained upon the ground that it is penal; it lacks an essential element of a penal statute, in that it permits the penalty to be visited upon a party not guilty of doing anything prohibited, or of violating any duty imposed by law. Potter's Dwarris, 74. The statute cannot be classed

as merely remedial, nor as a statute of indemnity, in that it fixes the amount to be paid for certain kinds of animals by an arbitrary schedule of prices without allowing proof of their actual value; as to other kinds of animals also, it provides for fixing their value by appraisers without allowing proof of their real value, and, in a certain contingency, the value may be fixed by a proceeding wholly *ex parte*. It is no answer to these objections that the schedule of prices may be reasonable, or that railroad companies may join in the appraisement proceedings. A statute cannot be considered merely remedial or compensatory which compels a party to pay for property destroyed without allowing him to produce evidence of its value.

It is true, the statute says, that " no railroad company shall at any time be required to pay more than the market value of any animal killed or damaged; " but nowhere in the statute is there any provision for an ascertainment of such value by evidence or by the usual mode of hearing and trial, or by any mode of actual trial. The statute not only makes a railroad company unconditionally liable for any domestic animal it may kill or damage, but it deprives the company of the mode of trial afforded to other litigants in like cases. By the terms of the statute, when the value of an animal is fixed by the schedule neither party can vary the same; in the appraisement of other animals neither party can be heard by witnesses or counsel. This would seem to bear equally against both parties; but it does not. The remedy of the statute being cumulative, the owner of animals killed or damaged may resort to the statute, or he may rely upon his common law action, as was held in the *Henderson Case*, Sutherland, sec. 399. But when the owner resorts to the statute, there is no alternative for the railroad company, if the statute be upheld. In these respects the statute denies to railroad companies " the equal protection of the laws; " it provides that they may be subjected to liability and to a judgment without opportunity for hearing or trial according to " the law of the land," and thus, they may be deprived of their property " with-

out due process of law." Such a statute cannot be upheld as constitutional.

In this connection the language of Mr. Webster is most appropriate : " By the law of the land is most clearly intended the general law; a law which hears before it condemns, which proceeds upon inquiry, and renders judgment only after trial." Constitution U. S., art. 14; Constitution Colo., art. 2, sec. 25; Cooley's Const. Lim. (6th ed.) 431; *East Kingston v. Towle*, 48 N. H. 65; *County of San Mateo v. Southern Pac. R. R. Co.*, 8 Am. & Eng. R. R. Cases, 1; *D. & R. G. Ry. Co. v. Outcalt*, 2 Colo. Ct. of App. 395; *Graves v. North. Pac. R. R. Co.*, 5 Montana, 556; *Dacres v. Oregon R. & N. Co.*, 20 Pac. Rep. 601.

9. We do not decide that the legislature has not the power to enact a valid statute making railroad companies liable for domestic animals killed or damaged by the operation of their trains, irrespective of the question of negligence. What we decide is, that as the statute did not require the fencing of railways, either imperatively or optionally, under such circumstances as are disclosed in this record, there was no basis for a *penalty*, and that the mode prescribed by the statute for enforcing liability as a matter of *indemnity* is in violation of constitutional rights.

10. By the second count of the complaint plaintiff seeks to recover twice the full value of the animal killed. This recovery is claimed on account of the alleged failure of the defendant company to keep the book and to file notice therein of the killing of said animal, as required by amended section 15 of the statute. If we were at liberty to ignore amended section 14, the question of the sufficiency of the second count might be somewhat difficult of determination. But we are of the opinion that section 15 must stand or fall with the other sections of the statute considered in this opinion. It evidently was not designed that there should be a trial, as in other civil actions, to ascertain the actual value of the animal killed under section 15, while the schedule price or statutory mode of appraisement as provided by section 14 should

be resorted to for other purposes ; nor was it, in our opinion, the design of section 15 to give the owner of an animal killed twice the full value thereof in addition to the schedule price or appraised value or double that sum as provided by section 14. The sections of the statute considered in this opinion must be construed together as dependent and not as independent provisions.

Our conclusion is, that while the reason given for the dismissal of the action by the district court was not warranted, nevertheless, under the law as it then existed, no valid judgment could have been rendered upon the pleadings, and, therefore, the judgment of dismissal must be affirmed.

*Affirmed.*