HOME INSURANCE CO. ET AL., PLAINTIFFS IN ERROR, v. A. T. & S. F. R. R. CO., DEFENDANT IN ERROR.

1. RIGHT JUDGMENT, WRONG REASON.

Where from a review of the whole record it clearly appears that the judgment rendered is right, it will not be reversed by the appellate court on the sole ground that some erroneous reason for the decision was expressed by the trial court.

2. ASSIGNMENT OF CHOSE IN ACTION.

A claim for damages to property may, under our statute, be assigned so as to vest in the assignee the right of action in his own name; the general rule is that assignability and descendibility go hand in hand.

3. PARTIAL ASSIGNMENT.

The assignment of part of an entire demand will not be sustained at law, but will be upheld in equity, where the demand is for some certain or definite fund which equity requires shall be divided according to the assignment.

4. EQUITABLE PLEADINGS.

Under our practice, legal and equitable relief may be had in the same action as the nature and cause of the action may require; but, in order that equitable relief may be had, equitable pleadings must be interposed.

*Error to the District Court of Arapahoe County.*

Action by The Home Insurance Company and others, plaintiffs, against The Atchison, Topeka & Santa Fe Railroad Company, defendant.

The complaint alleges, in substance, that the Arkansas Valley Land and Cattle Company was the owner of 370 tons of hay of the value of $3,700, stacked upon the Holly ranch in Bent county, Colorado, through which the defendant company operates its line of railroad, and that on March 19, 1887, said hay was consumed by fire set out or caused by the operation of said railroad. It further alleges that the cattle company on July 7, 1887, for a valuable consideration assigned to plaintiffs its claim against the railroad company for the loss of said hay.

The answer denies that the fire complained of was caused by the operation of defendant's railroad, and also denies the assignment of the Cattle Company's claim to plaintiffs. The answer contains a special defense, to the effect that on April 23, 1887, defendant, without notice of any claim or demand of plaintiffs, paid the Cattle Company the sum of $600, in full satisfaction of all losses occasioned by fires to the date of said payment; and that in consideration of such payment the Cattle Company did in writing on the date last aforesaid release and forever discharge defendant of and from all manner of actions, causes of actions, suits, claims and demands whatsoever, in law or equity, etc.

The special defense was traversed by the replication; and a jury was impaneled to try the cause. The record shows, *inter alia*, the following proceedings :

" This cause having heretofore come on for trial before this court, and a jury, and at the close of the testimony on both sides, the defendants having moved that the jury be directed to find for the defendant, and by consent of the parties, the jury having been at that stage of the case dismissed, and the cause submitted to the court, and the court having, after hearing arguments, sustained the said motion, and found for the defendant, on the ground that the plaintiff's complaint

and cause of action were not sustained by the evidence adduced on the trial, the assignment of several portions of the alleged claim of the assignor in the complaint named to the said several plaintiffs being void, and not proving the cause of actions set out in the complaint."

Motion for a new trial was denied, and judgment was rendered for defendant on the finding aforesaid. To reverse such judgment plaintiffs bring the record to this court by writ of error.

Messrs. WOLCOTT & VAILE, for plaintiffs in error.

Mr. CHARLES E. GAST, for defendant in error.

MR. JUSTICE ELLIOTT delivered the opinion of the court.

At the close of the testimony, by consent of parties, the jury was discharged and the cause was submitted to the court to pass upon and decide all matters of fact, as well as of law, under the issues and the evidence, the same as if no jury had been impaneled. The court found in favor of defendant.

In the case of *Wadsworth v. U. P. Ry. Co.*, 18 Colo., 600, where plaintiff elected to stand by his case as made rather than have a new trial, it was held, after verdict by the jury, that the trial court was justified in dismissing the action on the ground that plaintiff could not, in any event, as a matter of law, recover in the action.

In the present case, as in the *Wadsworth Case*, it is contended that, as the reason expressed by the trial court in connection with its finding was erroneous, the judgment must be reversed. But the better rule undoubtedly is that where, from a review of the whole record, it clearly appears that the judgment rendered is right, it will not be reversed by the appellate court on the sole ground that some erroneous view or reason for the decision was expressed by the trial court.

2 Thompson on Trials, § 2404; *Bell v. Cunningham*, 81 N. C. 83.

The statute of this state, making railroad companies liable for damages by fire set out or caused by the operation of their trains, has been held constitutional, and declared to be purely remedial in its nature. Gen. Stats. 1883, § 2798; *U. P. Ry. Co. v. De Busk*, 12 Colo. 294; see, also, *Wadsworth Case, supra*.

That an *entire claim* for damages to property may, under statutes like ours, be assigned so as to vest in the assignee the right of action in his own name, is well established by the current of authority. The general rule is, that assignability and descendibility go hand in hand. Under our system of practice it is not material whether the claim be assignable at law or in equity, though, as will hereafter appear, in order to recover on an assignment sustainable in equity, but not at law, the facts showing the equitable grounds of the assignment must be set forth in the pleadings. Rev. Stats. 1868, p. 682; Code, §§ 1, 3, 4; Bliss on Code Pleading, §§ 3–7, 38, *et seq.;* *Kelley v. U. P. Ry. Co.*, 16 Colo. 455; Am. & Eng. Ency. of Law, title, Assignments.

The complaint shows no defect in plaintiffs' cause of action. But, as the decision of the lower court was based upon the merits of the controversy as disclosed by the testimony, the law applicable to the evidence as well as to the pleadings must be considered. Upon the evidence produced difficult questions arise. The evidence shows that different fires occurred at the Holly ranch on different days. Each fire, it appears, was set out or caused by the operation of defendant's line of railroad. The fire which burned the hay described in this action occurred on March 19, 1887; the same fire also burned certain pasture lands and fence posts, in addition to the hay. Other fires occurred on April 7, 1887, and burned large areas of pasturage, and also certain fencing materials.

In April, 1887, claims were presented by the Cattle Company against the defendant Railroad Company for damages occasioned by these fires. The claims were as follows:

EXHIBIT 1.

## "THE ARKANSAS VALLEY LAND AND CATTLE COMPANY (Limited).

"HOLLY, Colo., April 5th, 1887.

"A. T. & S. F. R. R., Dr.

To A. V. L. & C. Co.

| | |
|---|---|
| 200 acres pasture land burnt by sparks from engine, March 19, 1887, at 50c. per acre . | $100.00 |
| 45 posts at 18c. . . . . . . | 8.10 |
| | $108.10 |

County of Bent,   } ss.
State of Colorado.  }

"H. R. Tillett, being first duly sworn, says that he is the legal authorized agent of The Arkansas Valley Land and Cattle Company, and that the above claim is just and true to the best of his knowledge and belief, and furthermore sayeth not.

(Signed)      "H. R. TILLETT, Supt.

"Sworn and subscribed to before me, this
18th day of April, A. D. 1887.

(Signed)      "C. D. McPHERSON, J. P."

EXHIBIT 2.

## "THE ARKANSAS VALLEY LAND AND CATTLE COMPANY (Limited).

"HOLLY, Colo., April 9, 1887.

"A. T. & S. F. R. R. Co.

To A. V. L. & C. Co.

| | |
|---|---|
| 1000 acres pasture burnt April 7, at 50 c. . | $500.00 |
| 25 fence posts burnt April 7, at 18 c. . . | 4.50 |
| The above is west of station and north of track. | |
| 200 acres pasture burnt same date at 50 c. . | 100.00 |
| 35 fence posts burnt same date at 18 c. . . | 6.30 |
| North of track, east of station | |
| | $610.80 |

County of Bent,   ⎱ ss.
State of Colorado. ⎰

" H. R. Tillett, of Holly, in the county aforesaid, being duly sworn, says that he is the legal authorized agent of The Arkansas Valley Land and Cattle Company, and that the above damage was done by fire started from engines belonging to the Atchison, Topeka & Santa Fe Railroad, and that the above account is just and true, to the best of his knowledge and belief, and further says not.

(Signed)        " H. R. Tillett, Supt.

" Sworn to this 9th day of May, A. D. 1887,

before me.

(Signed)        " C. L. McPherson, J. P."

The following written instrument was identified as genuine, and read in evidence in behalf of defendant:

" Atchison, Topeka and Santa Fe Railroad Company, to Arkansas Valley Land and Cattle Company.

" Hollys, Colo., April 23, 1887.

" For all damages by reason of fires set by locomotives on the A. T. & S. F. near Hollys, to this date; and in full satisfaction and payment for all losses by said fires.

" Amount claimed, $718.90; and settled in full for $600.

" Examined by J. W. W.

" Correct, C. M. L.

" C. M. Rathbun, Superintendent.

" Approved, C. M. Foulks.

" Approved, H. C. Clements, Auditor.

" Approved, J. F. Goddard (J. N. F.), General Manager.

" Received of the Atchison, Topeka & Santa Fe Railroad Company six hundred dollars, in full payment of the above account. In consideration of the payment of said sum of money, I, H. R. Tillett, Superintendent of Hollys, in the county of Bent and state of Colorado, hereby remise, release and forever discharge the company of and from all manner of actions, causes of actions, suits, debts and sums of money, dues, claims and demands, whatsoever, in law or equity,

which I have ever had or now have against said company, by reason of any matter, cause or thing, whatever, whether the same arose upon contract or upon tort.

"In testimony whereof, I have hereunto set my hand this 29th day of April, 1887.

(Signed)      "H. R. TILLETT,

"Superintendent.

"Witness, C. L. McPHERSON."

There was no error in the refusal of the court to allow plaintiffs to show by the witness Tillett that he was not, and never had been, an officer of the Cattle Company. It was a matter of no importance as the case stood when such offer was made. Tillett had already testified as a witness for plaintiffs to his capacity as superintendent of the company's ranch at Hollys, and to his presentation of the two claims in behalf of the Cattle Company; he also admitted that he settled those claims. Technically he may not have been a *corporate officer* of the Cattle Company; and yet it appears that he was authorized to present, settle and collect the claims for the company, as he had assumed to do. There was no offer to show that he did not sign the receipt, nor that he did not have authority so to do, nor that the Cattle Company did not receive the payment which Tillett receipted for as its superintendent.

A careful examination of the evidence shows that all the fires complained of occurred before the settlement between the Cattle Company and the Railroad Company. The claim of the Cattle Company for the loss of the hay was, therefore, as complete at the date of that settlement as it ever was. The evidence also shows that the Cattle Company by its superintendent in charge of its ranch had full notice of the destruction of the hay at the time of such settlement; it had the same notice of the destruction of the hay as of the pasturage and fence posts. It was established without controversy by plaintiffs' evidence that the hay, which is the subject of this lawsuit, and certain pasture lands and certain fence posts were burned by the same fire at the same time.

Superintendent Tillett testified that he presented the claims to the Railroad Company for the pasturage and posts that were burnt; but that he did not settle anything except the items of the loss specified in the two accounts marked Exhibits 1 and 2. Thus, the Cattle Company undertook to show that it had settled with the Railroad Company for a part only of an entire demand occasioned by a single act—an act in the nature of trespass or negligence, actual, constructive, or implied, as the case may be classified under the statute, while it reserved its claim for the residue of the loss occasioned by the same act; that is, it undertook to show a settlement for the posts and pasturage, but a reservation of the claim for the hay, though all those articles of property were destroyed by the same act.

In jurisdictions where law and equity are administered by different tribunals, or on different sides of the same tribunal, the general rule is that the assignment of part of an entire demand will not be sustained by the law courts, though it will be upheld by the equity tribunals where the demand is for some certain or definite fund which equity requires should be divided according to the assignment. Under our present practice, legal and equitable relief may be had in the same action, as the nature and cause of the action may require; nevertheless, in order that equitable relief may be had, equitable pleadings must be interposed; hence, a partial assignment of a legal demand will not be sustained in our courts, unless the facts showing the equitable right or interest upon which the partial assignment is based are *alleged* as well as proved.

In *Exchange Bank v. Ford*, 7 Colo. 320, our late Chief Justice Helm, delivering the opinion of this court, clearly stated the distinction to be observed in pleading matters of legal and equitable cognizance as follows: "The code abolishes *forms* of actions merely, including the difference in this respect between actions at law and suits in equity, and provides a single method of pleading; it does not undertake to do away with the distinction between legal and equitable

*causes* of action ; it does not rescind the rule that the allegation and the proof must correspond, nor the correlative principle that the judgment must follow the pleadings. To procure standing in a court of equity and obtain equitable relief, the pleader must still state an equitable cause of action or defense." The same doctrine is recognized in *Fillmore v. Wells*, 10 Colo. 236 ; *Danielson v. Gude*, 11 Colo. 92 ; and, also, *First Nat. Bank v. Wilbur*, 16 Colo. 320.

In the present action the complaint imply alleges that the Cattle Company's claim for the loss of the hay was assigned to plaintiffs for a valuable consideration ; it shows an assignment of the claim to them jointly ; it does not allege the nature of the consideration, nor the facts and circumstances of the transaction in detail as good equity pleading requires. Bliss on Code Pl. § 3. The evidence offered, as we have seen, shows that the loss of the hay was a part only of the damages resulting from a single cause of action, to wit, the fire set out by defendant's engines on March 19th. The cause of action was the fire ; the items of the damages were the destruction of the posts, the pasturage and the hay. Thus, the assignment was for a part only of the damages arising from a single cause of action. More than this, the several articles of assignment and subrogation produced in evidence show an assignment of the damages to nine different insurance companies (plaintiffs in this action) in severalty ; for example, an assignment by the Cattle Company of its claim against the Railroad Company to the Home Insurance Company to the extent of $264$\frac{93}{100}$ ; to the American Insurance Company, a similar assignment, to the extent of $176$\frac{72}{100}$ ; and so on, aggregating $2,960.

Each article of assignment and subrogation recites that the Insurance Company therein named had insured the hay of the Cattle Company, had paid a specified sum on account of the loss of the hay, and that said company was by such assignment, to the extent of the sum so paid, authorized to sue for, settle, or compromise any claim which the Cattle Company had against any party liable for the burning or destruc-

tion of the hay, thus fully substituting and subrogating the Insurance Company to all the rights of the Cattle Company in the premises.

It is urged by counsel that plaintiffs' cause of action is supported by strong equities. If so, the facts showing such equities should have been pleaded, thus giving defendant opportunity to controvert them, or to confess them and save further costs in the action. When insured property is destroyed by the carelessness or negligence of a third party, it may well be said that an insurance company liable to its policy holder for the loss should, in equity, upon making payment, be subrogated to the rights of the insurer against the wrongdoer; but, where the liability exists by mere force of the statute, the equity of the insurance company is not necessarily very strong, and in some instances it may be very slight, or have no existence at all. The statute makes the railroad company liable unconditionally irrespective of any negligence on its part. The statute is upheld as a statute of indemnity—a remedial statute whereby the *owner* may recover for the loss of his property. The statute is based upon the consideration that the railroad company is, by special franchise, allowed to operate its trains for profit by the dangerous agency of steam, and that in so doing it exposes property owned by others situate upon the line of its road to unusual hazards; hence, as between the railroad company and such property owners the statute makes the company liable for the damages caused by fire from its engines.

But can it be maintained that the insurance company occupies the same position as the owner whose property is thus exposed, it may be, without his consent? The insurance company voluntarily goes upon the line of the railroad, and insures property exposed to such extraordinary danger; the insurance is granted for premiums presumably commensurate with the extraordinary hazard. The insurance company, as well as the railroad company, pursues its business for a profit. Insurance is granted for a consideration against fires caused by the operation of the railroad, as well as against

fires otherwise caused.  How, then, can it be said that the insurance company has a strong equitable claim to reimbursement from the railroad company for losses occasioned by fires from its trains, especially in a case where the fire has occurred without any fault or negligence of the railroad company—a purely accidental fire?

In the present case the complaint does not allege that the railroad company was guilty of any negligence in causing the fire which destroyed the Cattle Company's hay ; nor does it allege that plaintiffs obtained the assignments of the Cattle Company's claim in consideration of their insurance and payment for the property destroyed, nor does it allege any other equitable matter to uphold a partial assignment.

The evidence shows that the Railroad Company had, without notice of any insurance, payment, assignment or subrogation on the part of plaintiffs, settled and paid the Cattle Company at least a part of the damages occasioned by the same fire which destroyed the hay ; the defendant company had taken a receipt in full satisfaction of all claims and demands occasioned by the fire complained of.  Such settlement was had with an agent of the Cattle Company, who had full knowledge of all the facts and circumstances of the case ; there was no evidence of mistake or fraud in the procurement of the receipt; and such settlement and payment appear to have taken place before the assignments to the insurance companies were executed.

The objections to a recovery by plaintiffs as contended for by counsel may be summarized as follows :

That a claim for unliquidated damages growing out of a single cause of action cannot be split up into two or more claims so as to make a party liable to two or more actions without his consent, unless some equitable consideration requires such a division of the damages ; and that in the absence of such consent or equitable consideration, the settlement and discharge of a portion of such a claim is a discharge of the whole.

That the receipt given by the Cattle Company in discharge

of its claims against the Railroad Company was in the nature
of a contract and operated as a release ; and that parol evi-
dence was not admissible to change or vary the terms of such
instrument, except upon evidence showing that the same was
procured by mistake or fraud, and that there was no evidence
of mistake or fraud.

That the receipt given by the Cattle Company to the Rail-
road Company was upon its face of such a nature that the
Cattle Company could no longer have maintained any action
against the Railroad Company for the loss of the hay ; that a
party cannot by assignment acquire rights superior to those
possessed by the assignor at the time of making the assign-
ment; and that the same principle applies to subrogation.

In short, that the articles of assignment and subrogation
were invalid, because at the time of their execution the Cat-
tle Company no longer had any claim against the Railroad
Company.   Sheldon on Subrogation, § 6 ; 1 Greenleaf's Ev.
§ 275 ; *Guldager v. Rockwell,* 14 Colo. 459 ; *Coon v. Knapp,*
8 N. Y. 402 ; *Trask v. Hartford & New Haven R. R. Co.,* 2
Allen, 331 ; *Brown v. Brooks,* 7 Jones (N. C.) 93 ; *Ills. Cent.
R. R. Co. v. Welch,* 52 Ills. 183 ; *Batdorf v. Albert,* 57 Pa.
St. 61.

We do not decide that the receipt, considering its apparent
connection with exhibits 1 and 2, could not be explained so
as to show that it was not intended to include the claim of
damages for the hay ; nor do we hold that a part of an entire
demand for unliquidated damages growing out of a single act
or transaction, such as was disclosed by the evidence, cannot,
in equity, be transferred, so as to vest a right of action in the
transferee.   Our conclusion is, however, that the only relief
to which plaintiffs in this action are entitled is, in its nature,
equitable, and that, in order to recover, the facts showing
such equities must have been pleaded, in substance, as equity
pleading requires.   See *Exchange Bank v. Ford,* and other
cases above cited.   Since the facts showing such equities
were not in any manner pleaded, the evidence did not corres-
pond to the allegations, and was not sufficient to sustain the

issue on the part of plaintiffs; it follows that the decision of the trial court upon the law and the facts must be upheld. The judgment of the district court is accordingly affirmed.

*Affirmed.*