[No. 4660.]

LARSH v. BOYLE ET AL.

1.  Conveyances—Deeds—Escrows—Conditional Delivery.

There can be no conditional delivery, or delivery in escrow, by the grantor to the grantee in a deed, as such conditional

delivery must be to a' stranger, and not to a party to the transaction.—P. 23.

2.   **Mines and Mining—Option to Purchase—Assignment of Interest—Equitable Estoppel.**

Where parties holding an option to purchase a mine assigned in writing a half interest to another party, and they jointly formed a mining partnership and began work on the mine in accordance with the assignment, the assignors cannot be heard to say that such assignment is not a perfected and delivered instrument.—P. 24.

3.   **Same—Option to Purchase—Surrender of Interest.**

Where parties holding an option to purchase a mine assigned an interest to plaintiff, and they jointly formed a partnership to purchase and work the mine, and later plaintiff abandoned his interest and failed to carry out his covenants in the deed of assignment without legal excuse for such default, he is entitled to no relief, and such abandonment is not invalid under the statute of frauds.—P. 24.

4.   **Same—Practice in Civil Actions—Abandoning Verified Answer—Evidence.**

Where parties holding an option to purchase a mine assigned an interest in it to plaintiff on condition that he would pay a portion of the purchase price, and they jointly formed a partnership and worked the mine; and thereafter, in a suit by plaintiff to recover his interest, they filed a verified answer alleging that plaintiff made the first payment with partnership funds and that, on discovery of that fact by them, he promised to return such sum; held, that, in the absence of showing that the evidence was not considered by the court in finding for the defendants, it was reversible error to permit the defendants to abandon their verified answer and introduce evidence to the effect that, as soon as they discovered that plaintiff had appropriated the partnership funds for such use, they repudiated such action and declared his interest forfeited.—P. 25.

5.   **Same—Mining Partnership—Use of Partnership Funds—Rights and Liabilities of Partners.**

Where parties holding an option to purchase a mine, assigned an interest to plaintiff and another on condition that the latter should pay the installments of the purchase price, and all the parties then entered into a mining partnership, the fact that plaintiff's co-assignee made an entire payment of one instalment out of the partnership funds was not ground for the . other partners to declare a forfeiture of plaintiff's interest, where the mining partnership at the time was indebted to plain-

tiff's co-assignee in a sum equal or in excess of that withdrawn, even though the assignors did not give their consent to such appropriation.—P. 26.

6. **Same—Assignment of Option to Purchase—Mining Partnership—Failure of Partners to Pay.**

Where parties having an option to purchase a mine, assigned an interest therein to plaintiff and another in consideration of the latter to pay installments of the purchase price, and all the parties then jointly formed a mining partnership to purchase and work the mine, and plaintiff paid the first installment and, when the second installment came due, made an arrangement whereby one of the vendors of the mine took the joint note of the partnership, and the latter then borrowed on their joint note at a bank sufficient to pay the other vendor; held, that though plaintiff had not paid his share of the two notes by which the money was raised to pay the latter vendor, such failure did not forfeit his interest in the property, and he is entitled to recover such interest in a suit wherein he offers to fully perform his obligations.—P. 31.

*Appeal from the District Court of La Plata County. Hon. James L. Russell, Judge.*

Action by Paul A. Larsh against W. J. Boyle, James Dennison, James J. Gorman and Frank H. Rivers. From a judgment in favor of defendants, plaintiff appeals.                    *Reversed.*

Mr. B. W. RITTER, Mr. RICHARD McCLOUD, and Messrs. THOMAS, BRYANT & LEE, for appellant.

Mr. REESE McCLOSKEY, Mr. W. A. REESE, and Mr. B. B. RUSSELL, for appellees.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

This is an action by appellant Larsh, as plaintiff below, to recover a certain interest in the Neglected mine and certain unpatented mining locations, and for an accounting of the business of a mining copartnership. Trial to the court without a jury resulted in findings for defendants, and the action was dismissed. The plaintiff is here with his appeal.

Plaintiff's claim of an interest in the mining locations rests upon an entirely different foundation from that on which he bases his rights in the Neglected mine. Our examination of the record leads to the conclusion that the trial court was right in deciding that the plaintiff had failed to establish his claim to an interest in these locations, and in that respect its judgment will be affirmed. Further discussion, therefore, is directed to the controversy over the Neglected mine.

A summary of the pertinent parts of the pleadings and the responsive evidence, in connection with the various questions argued by counsel, will best present the nature of this controversy. From the complaint it appears that in March, 1901, Gaines and Andrews owned this property. They then gave a written bond and lease of it to the defendant W. J. Boyle. This instrument was dual in character. It included an ordinary mining lease, and a naked option to purchase; the former mutual, the latter unilateral. One of the conditions of the title bond was that if Boyle paid the aggregate sum of $10,000 in several payments and at certain designated times, the owners would convey to him the mine. The first three payments of $2,000 each were to be made respectively on or before July 15, 1901, October 15, 1901, and July 15, 1902, and $4,000 on or before May 1, 1903. Before the maturity of the first payment, in consideration of the payment of $100, Boyle secured from the owners an extension of one month for the payment of the balance of $1,900. Soon after the bond and lease was executed, Boyle assigned an undivided one-half of his interest therein to the defendant Dennison. About the 9th of July, 1901, Boyle and Dennison assigned an undivided half interest in the bond and lease to the plaintiff Larsh and defendant Gorman—defendant Rivers, to the

knowledge of all the parties, being interested with Gorman—upon the consideration that the assignees should pay the entire purchase price of $10,000 at the times designated in the title bond, and, with the assignors, perform its other conditions to which Boyle had pledged himself under his agreement with Gaines and Andrews. These allegations of the complaint are admitted by the answer. Up to this point, therefore, there is no dispute between the parties. The plaintiff in his complaint alleges, and by his evidence attempted to show, that in legal effect, and so far as his assignors Boyle and Dennison are concerned, he made the first payment of $1,900 due on the bond August 15, 1901, and the second payment of October 15, and complied with the other conditions of the agreement to be by him performed up to the time this action was begun, and therefore, he maintains that the interests he thereby obtained should be protected.

In the answer the execution of the assignment by Boyle and Dennison to Larsh and Gorman was admitted, but there was a denial that the instrument was ever delivered, and an affirmative allegation, to which the defendants testify, that the instrument, though duly executed and acknowledged by all of the parties except Dennison, was not to be delivered or become binding until Dennison acknowledged the same, and until Larsh and Gorman paid all the purchase money, neither of which conditions was ever complied with. There was a denial, also, that Larsh had done or performed any of the things which he agreed to do under the terms of the assignment.

It was alleged in the answer and admitted by plaintiff that practically contemporaneously with the assignment to Larsh and Gorman the four parties interested in the bond and lease, Boyle, Dennison, Larsh and Gorman, entered into a mining copartner-

ship under the name of the Neglected Mining Company for the purpose of working the mine under the lease. The answer avers that the company continued this work up to about the middle of October, 1901, when it was ascertained that the mine had run behind, and the mining company was indebted for labor and material in a large sum of money; and that Larsh, finding himself unable to comply with his agreement, orally agreed with his copartners to withdraw from the company and renounce all of his rights under the lease and option and all of his interest in the mine, and the other parties thereupon formally declared a forfeiture of his rights, in which he acquiesced, and thereupon he severed his connection with the copartnership and surrendered his interest in the subject-matter of the bond. To this alleged voluntary yielding up of Larsh's rights, all of the defendants testify, though Larsh denies it. With this brief summary of the pleadings and evidence, most of which is applicable alike to all the points discussed in the opinion, we now proceed to a consideration of the general propositions argued by counsel, where will be found such additional statement of the contents of the pleadings and evidence as pertain to the several questions involved.

1. We are constrained to hold that the deed of assignment was delivered. Defendants admit there was a delivery of the instrument to one of the grantees, but claim that it was conditional. The doctrine is elementary that there can be no conditional delivery or delivery in escrow, by the grantor to the grantee in a deed. Such conditional delivery must be to a stranger, and not to a party to the transaction. Here, according to defendants, the delivery was made to Rivers, one of the grantees, though his name did not appear in the instrument. In addition to this, the evidence is that both Larsh and Gorman at different

times had possession of the instrument with the knowledge of the assignors Boyle and Dennison, and the proof is also clear that there was no agreement, to which Larsh or Gorman assented, such as defendants allege, that the instrument was not to be delivered until it was acknowledged by Dennison, and until payment of the purchase money. The conduct of all the parties speaks with a force that admits of no contradiction. It shows that every one of them understood that the deed had been delivered. Contemporaneously with its execution the parties formed a mining copartnership and entered upon the work of the development of the mine in accordance with the very terms of the deed itself. By word and conduct they treated it as a perfected and delivered instrument, and defendants cannot now be heard to assert the contrary.

2. One of the grounds discussed at length by appellant is that Larsh, by the instrument of assignment, acquired an interest in the Neglected lode which was real estate, and that such interest could not, under the statute of frauds, be waived, released, or abandoned by parol or verbal agreement. Whether till acceptance, or part or full performance, by the holder of a naked option to purchase, an interest in real estate is created, we need not decide. Our statute of frauds, however, does not include a surrender or abandonment by operation of law. If the evidence clearly showed, as it does not, that, by his acts and conduct, Larsh plainly manifested an intention to forfeit his rights and withdraw from all connection with the mining copartnership, and absconded and abandoned his interest in the property, it might be held a surrender or yielding up by operation of law. But in this character of an option, being merely a naked privilege to acquire an interest in realty, the statute of frauds has no bearing upon the alleged

surrender. A case quite in point is *Cameron v. Burnham*, 80 Pac. 929. If the plaintiff in this case failed and refused to carry out his covenants under the deed of assignment, he acquired no interest in the mine, and cannot recover such interest as he otherwise might have obtained had he fulfilled his contract. In other words, his right to a specific performance depends upon a compliance by him with the terms of the contract from which his rights spring, and if he fails to show substantial performance on his part, or a legal excuse for the default, he is not entitled to the relief which he asks. There is nothing, therefore, in the contention that, under the statute of frauds, the interests of plaintiff could not be divested.

3. Another assignment of error is that the court improperly refused plaintiff's offer to show that the payments of Larsh and Gorman of the purchase money were to be made out of the proceeds of the mine. We think this ruling, if not right, was not prejudicial, for we shall see, later on, that defendants themselves, both in their pleadings and evidence, have conclusively shown that the first and second payments were, in law, made by Larsh and his co-obligor, and defendants have estopped themselves to dispute it.

4. Complaint is also made by appellant that the court was wrong in permitting defendants to introduce evidence of instructions which Dennison gave to Boyle with reference to the delivery of the deed of assignment. That ruling becomes immaterial in view of our conclusion that the evidence clearly establishes that the instrument was delivered.

5. The most important question in the case, and one which we regard as pivotal, and whose resolution requires a reversal, and direction of the judgment, is the remaining topic of discussion. In the answer, and as a separate defense, it is alleged that

about the time the extended payment of August 15, 1901, became due, defendants were fearful that plaintiff Larsh would not 'be able to meet it. It is not denied by plaintiff that he was not able to do so out of his own funds, or funds other than those belonging to the Neglected Mining Company. This company at the time was indebted to the Durango Plumbing Company, composed of Gorman and Rivers, in an amount exceeding $3,000, more than sufficient to cover the $1,900 then due on the title bond. The answer alleged that defendants Boyle and Dennison were without means to make the payment, while defendant Gorman stood ready to pay his share of one-half of the sum. Plaintiff Larsh, as already stated, admitted his inability to pay his half, and thereupon asked of his copartners the privilege of taking it out of the proceeds of the ore mined, then in bank, one-fourth of which was his, and agreed that, if this were done, he would repay the same by depositing it to the credit of the mining company. The answer alleges that Larsh's three copartners denied such request, but notwithstanding their objection, he paid the whole sum of $1,900 out of the partnership funds without the knowledge of either of his associates. Immediately on discovering this fact, which must have been soon after it occurred, the answer says that the defendants protested against Larsh's action, whereupon he agreed that he would replace the sum of $1,000, being his share of the first payment, and the defendant Gorman immediately paid his share by causing a credit of $1,000 to be made upon the books of the Durango Plumbing Company to apply on the debt which the Neglected Mining Company owed to it.

The answer then proceeds with averments that plaintiff was repeatedly urged by defendants to repay the sum of $1,000 to the mining copartnership,

but he wholly neglected to do so, and it expressly says that Gorman was finally compelled to assume and pay, and did pay, the whole of said sum of $2,000, being the first payment of the purchase price under the bond, which he did by procuring further credit for said mining copartnership by crediting it with $2,000 on the amount which it owed to the plumbing company composed of Rivers and Gorman, and Gorman was thus compelled to pay to protect his share from forfeiture under the terms of the bond.

In the replication the plaintiff substantially admits these matters, except he says that this application of the mining company funds on the purchase money of the mine was made with the knowledge and consent of his copartners. However that may be, at the trial the court permitted defendants wholly to disregard this defense of the answer, and all of them, upon cross-examination, said that this verified defense was false. They utterly repudiate it, and say that, although Larsh did advance out of the mining partnership funds his share of the purchase price, none of the defendants knew anything about it until some time early in the following October, and when they heard of it, they protested against it, and because of Larsh's wrongful conduct in that particular and his inability to make the second payment due in October, 1901, they declared his rights in the copartnership, and his interest in the property, forfeited; in which, as they say, he acquiesced.

We are satisfied that a most grievous error was committed by the court. There was no attempt by defendants to show that through mistake this defense of the answer was inserted, nor was there any request to withdraw it, or amend their pleading to correspond to the proof. We do not say such amendment is permissible. We do say no motion to amend was made. The proofs with respect to the August

payment which the defendants produced were direct-
ly contradictory of, and a fatal variance from, the
allegations of their answer. The case, indeed, is not
merely one of variance. It altogether ignores a
solemn verified pleading and shows facts which, if
true, contradict it. Defendants should have been held
bound by the allegations of this defense.

Defendants seek to explain away this palpable
error by saying that, even if the court was wrong in
this respect, yet, since the plaintiff wholly failed to
show a compliance by him with the conditions of the
bond, as to payment, the judgment of the court should
be allowed to stand. We are not satisfied with this
explanation. We do not know what influence the evi-
dence upon this branch of the case had with the trial
court. For aught that appears, it was upon this
very evidence that the court held that plaintiff had
failed to make out a case. The doctrine is frequently
enforced that a right judgment may be sustained not-
withstanding bad reasons are given for it, and some
authorities go to the extent of holding that where a
right conclusion has been reached and the trial is to
the court without a jury, errors in admitting and re-
jecting evidence may be deemed harmless. We can-
not say in this case that the right conclusion was
reached, or could have been reached either with or
without the aid of this improperly admitted evidence,
and this ruling of the court in allowing the defend-
ants to disregard entirely the allegations of their
sworn answer, and testify to facts directly contradic-
tory and inconsistent therewith is, of itself, reversi-
ble error.

But the court was in serious error in holding
that plaintiff failed to make the first payment under
the bond. Notwithstanding its judgment, we are
satisfied from this defense of the answer, and upon
the uncontradicted evidence, that, so far as Boyle and

Dennison are concerned, and they are the only ones who are entitled to be heard, this first payment, due August 15, 1901, was made by Larsh and Gorman, or by one of them. If those allegations of their answer be true, in which it is charged that Larsh paid the one-half and Gorman the other, there can be no doubt whatever that such payment was made. For this part of the answer is clear to the point that when Boyle and Dennison discovered, as they say they did about the time the payment was made, that Larsh had taken his part from the copartnership fund, they protested, but, nevertheless, in law, they sanctioned it when Larsh agreed with them, as this pleading says, to replace the same out of his own funds. It is conceded that the owners of the mine got the money and properly applied it on the bond, and Boyle and Dennison got the full benefit of it. The fact that Larsh has not replaced it does not even tend to disprove that the payment was made to the owners, or that it was not credited by them as a valid payment on the bond. If Boyle and Dennison were satisfied at the time with Larsh's promise to repay, the mere fact that he neglected to do so does not make the payment any the less effective.

If, on the other hand, as also asserted by defendants by their evidence and in other allegations of their answer, no part of the payment of August 15 was made by Larsh, but Gorman, with the consent of Boyle and Dennison, made the entire payment himself out of partnership funds in order to protect his interest from forfeiture by crediting upon the books of the Durango Plumbing Company, of which he was a member, the sum of $2,000 which at the time was due from the Neglected Mining Company, of which Boyle and Dennison were members, this payment, so far as the latter are concerned, was as much a payment for Larsh's benefit as for Gorman's. Gorman

may have a claim on Larsh for the latter's proportion, but that is something of which Boyle and Dennison cannot complain. Their title bond to Larsh and Gorman was joint, not several. And a compliance therewith either by Gorman or Larsh satisfied it. That Gorman made the first payment, in order to protect his bond, all the defendants admit. So that, whichever position the defendants seek to maintain, whether it be that one-half of the payment was wrongfully made by Larsh and the other half rightly by Gorman, or that Gorman properly made the entire payment himself by crediting the Neglected Mining Company with $2,000 upon the debt which it owed the plumbing company, the fact is apparent that the payment was made at the time to the satisfaction of Boyle and Dennison, and strictly according to the terms of the bond. That the payment was made out of the proceeds of the copartnership, and not by Gorman and Larsh out of their individual funds, is something of which Boyle and Dennison cannot complain for the reasons already given. Indeed, even without the consent of the latter, Gorman or Larsh could properly make the bond payment out of the mining partnership funds; certainly if Gorman consented, as he did, for they were the financial managers of the mining company, and it was indebted to Gorman in a sum greater than the amount so withdrawn. The case made, therefore, at this stage is this: that the first payment on the title bond was made by Larsh and Gorman, or by one of them, in such a way as to comply with the obligation that rested upon them in that respect.

We come now to the second payment due October 15, 1901. According to the answer and defendants' evidence in its support, the mine was still running deeper and deeper in debt, which then amounted to more than $10,000. All the parties

were discouraged. Neither Larsh nor Gorman had money to make the second payment. They could not secure an extension from Gaines and Andrews. The defendants all testify that before this payment became due, Larsh's rights under the bond and lease had been declared forfeited by his copartners, to which action he voluntarily yielded his consent and thenceforward had no further connection with the mine, and defendants released him from all partnership debts, and assumed his obligations with respect to the bond and lease. They say he took no further part in the management of the mining company, and, after his withdrawal, the four defendants, Boyle, Dennison, Gorman and Rivers, entered into a new mining copartnership, the members of which, by mutual arrangement, succeeded to all the rights of Boyle under the bond and lease, and proceeded to work the mine and, on January 1, made a strike. They obtained sufficient money by March 21, 1902, to anticipate the third and fourth payments, which became due July 15, 1902, and May 1, 1903, and, upon making these two payments, received the deed to the mine from Gaines and Andrews.

It conclusively appears that about the 15th of October, 1901, after the defendants all say that Larsh had voluntarily given up his interest in the mine, they were unable to get an extension of the second payment from the owners, whereupon Larsh himself made an arrangement with Gaines whereby the latter agreed to take the joint note of Boyle, Dennison, Gorman, Larsh and Rivers for his share ($1,000) of the payment, and the five borrowed of the First National Bank of Durango, on their joint promissory note, $1,000, and deposited the same to the credit of Andrews as the payment of his share. These transactions occurred after defendants say

that Larsh had thrown up his interest in the property. If, as defendants say, Larsh had previously surrendered his rights in this property, and they had assumed all partnership debts and had taken upon themselves the payment of the purchase money of the bond, it is, to say the least, singular—indeed, it is inconsistent with human experience and rational behavior—that Larsh would immediately sign these notes and voluntarily assume an obligation to pay all of the second bond payment which could be enforced against him alone, after having given up all his interest in its subject-matter. Such a claim is too absurd for belief. It is so unreasonable and inconsistent with defendants' conduct at the time that it would seem that but little weight should be given to it. It is true that Larsh did not pay any portion of these notes which were afterwards paid by the other makers probably out of the proceeds of the mine. He gives his reasons for this failure, and they have assigned theirs.

This extended reference to defendants' answer and their evidence emphasizes the lack of foundation for their claim that plaintiff's rights are lost by his failure to pay the purchase money. But if plaintiff has not paid his share of the two notes, the giving of which by all the parties produced the fund with which the second payment on the title bond was made, his failure in that respect cannot forfeit his interest in the property for reasons assigned in discussing the first payment. He made the first payment, and thus partly performed—and defendants ratified it by voluntarily accepting credit on their bond, and saving a forfeiture of their rights—and now plaintiff offers fully to perform all his covenants under the bond upon an accounting both as a partner under the lease, and as one of the holders of the option.

There is no clause of the deed of assignment or in the original title bond which provides that a forfeiture shall result from a failure upon the part of plaintiff strictly to comply with its terms. A forfeiture is not favored in equity, and while, in a naked option on mining property, time is generally the essence of the contract, and a failure upon the part of the holder to comply within the times fixed, without legal excuse, ordinarily operates as a loss of his rights, yet, where there has been part performance and a reasonable excuse for a failure fully to perform, a court of equity will not decree a forfeiture, but will compel specific performance where it is within the power of the defaulting party at the time of trial to make the other party to the contract whole. —*McKenzie v. Murphy*, 31 Colo. 274-278.

We are of opinion, and base it on defendants' own pleading and evidence, that, since the first payment on the bond was made by Larsh and Gorman, or one of them, and the second one of October 15 was made in a way satisfactory to defendants at the time, they are not entitled to a judgment declaring a forfeiture of plaintiff's interests because he did not pay these notes which all of the parties gave at the time the second payment was due, or for any of the other reasons submitted. In view of defendants' answer and evidence, there is not any legal, competent, or sufficient proof that plaintiff surrendered or abandoned his rights under the bond or lease, or that he failed to make the payments required by the bond up to the time this action was begun. On the contrary, the findings and judgment, wholly irrespective of plaintiff's evidence, but upon defendants' own showing, should have been for plaintiff in these particulars. With respect to the plaintiff's rights under the lease, the record does not contain sufficient data on which to base a decree, largely because the court re-

fused to allow plaintiff to produce his evidence bearing on the same, and rightly held that an accounting should be deferred until plaintiff had established his equities. As we find the equities to be with plaintiff, an accounting should be had. We find, and so decide, that plaintiff has established his right to an undivided one-fourth interest in the Neglected Mine, which is to be conveyed to him as hereinafter directed.

The judgment will be reversed, and the cause remanded with instructions to the district court to take further proof and render a decree as to the relative rights of the parties in the mining partnership under the lease, and for an accounting of its business affairs, and an ascertaining of what sums, if any, are due plaintiff on final settlement of its business; that an ascertainment be had as to what sums, if any, are due from plaintiff on the purchase price of the mine, on the basis of his ownership of an undivided one-fourth thereof, and that, when such sum is fixed and paid to defendants, if any be found due, that the former judgment be vacated, and a decree be entered establishing his ownership of an undivided one-fourth interest in the Neglected Mine, and that defendants be required to make conveyance thereof to him. No further evidence shall be taken upon the matters decided by us, as indicated in the opinion, but only as to the issues concerning the mining copartnership and an accounting, just referred to, and all proceedings below must be in accordance with the views herein expressed.

*Reversed.*

CHIEF JUSTICE GABBERT and Mr. JUSTICE STEELE concur.