[No. 6134.]

ᐱDENNISON ET AL. v. BARNEY.

1. **Statute of Frauds—A Rule of Evidence**, and not of pleading. A complaint averring a contract to convey lands need not show that it was in writing. If it does not affirmatively appear that the promise was verbal, the complaint is not, on this ground, demurrable.—(448)

2. **Pleadings—Construction**—The meaning of each word and phrase is to be drawn from the context.

A complaint alleging the execution and delivery of a conveyance upon defendant's promise to redeliver the same or reconvey the premises to plaintiff, upon his recovery, etc., does not show that the promise was not in writing. The complaint is to be read as if it expressly averred a promise in writing.—(448)

In such case, an averment in the answer that the promise was not in writing, is not new matter, and requires no reply. And a reply which is in effect a demurrer to the answer does not admit that the contract was verbal.—(448)

This ruling in no way militates against the rule that the statute of frauds must be specially pleaded.—(448)

The answer pleaded the statute of limitations. The reply averred that the statute had no application. Held, a legal conclusion, and being inconsistent with the averments of the complaint, to be rejected.—(457, 458)

3. **Appeals—Harmless Error**—A judgment, correct in results, will stand, though by the court below rested upon unsound principle.—(449)

4. **Conveyances—Delivery**—A deed conveying land complete and duly executed, and expressed to be upon consideration, takes effect from its delivery.—(451)

There can be no delivery in escrow to the grantee.—(452)

A condition in words, e. g., that the grantee shall surrender it if the grantor survive a then existing malady, is without effect.—(451)

That the deed was in fact without consideration, in no way impairs its effect.—(455)

Nor does the grantor's continued possession of the land and payment of taxes.—(455)

5. **Limitations—When the Statute Begins to Run**—A bill to establish a trust in lands must be brought within five years from the accrual of the action (Mills' Stats., § 2912; Rev. Stats., § 4073).—(456)

The action accrues when the trustee repudiates the trust. with notice to the beneficiary.—(457)

*Appeal from Denver District Court* — Hon. PETER L. PALMER, Judge.

Mr. O. N. HILTON, Mr. G. M. ALLEN, Mr. CÆSAR A. ROBERTS and Mr. C. V. MEAD for appellants.

Mr. CHARLES W. WATERMAN and Mr. HENRY McALLISTER, Jr., for appellee.

Mr. JUSTICE WHITE delivered the opinion of the court:

W. Neil Dennison filed a complaint against Anna Barney, in which it was alleged that plaintiff was the owner and in possession of an undivided one-fourth interest in the Forest Queen mining claim in the Cripple Creek district; that, on the 25th day of December, 1897, "the plaintiff was taken seriously

ill, and for a long time his life was despaired of";
that, while so ill, he prepared a mining deed to the
defendant for his interest in the mining claim, and,
upon defendant's "solemn promise and undertaking
to redeliver the same to this plaintiff in the event
of his recovery, and not to place the same of record
unless, in the event of the death of this plaintiff,
he, this plaintiff, delivered the same to the defend-
ant in trust only, she, the defendant, promising this
plaintiff at the time of such delivery that, if this
plaintiff got better and did not die, she, the defend-
ant, would convey back the said premises to this
plaintiff on demand, or deliver back to plaintiff said
deed, as he, this plaintiff, might elect."

The instrument of conveyance is a regular min-
ing deed of bargain and sale, acknowledged before
a notary public December 25, 1897, by the plaintiff,
conveying, or purporting to convey, the mining claim
to defendant. It is set forth *in haec verba,* in the
complaint, and, *inter alia,* recites that it is given "for
and in consideration of the sum of $5,000.00." The
complaint alleges that no consideration was, in fact,
paid by the defendant to the plaintiff, but that the
deed was wholly "voluntary, sham and fictitious,"
and defendant held the premises under the convey-
ance in trust for the plaintiff; that plaintiff recov-
ered from his illness, "and on many occasions during
the earlier part of the year 1899, and since that
date," requested defendant to redeliver the deed in
keeping with their said promise and agreement, or to
reconvey the premises to plaintiff; that said defend-
ant utterly neglected and refused to so do, and on
the 8th day of May, 1899, duly filed said deed for
record in the office of the clerk and recorder of Tel-
ler County; that plaintiff has always been the owner
of the premises and has paid taxes thereon; that the
conveyance from plaintiff to defendant was and is

"fictitious and void," and "operates only as a cloud on the title of this plaintiff, and that the recording of said deed by the defendant was in violation of said trust, and a fraud on this plaintiff." The complaint prays for a decree to the effect that plaintiff was and is the real owner of the premises, and that the defendant "held the same in trust for this plaintiff"; that the plaintiff be adjudged and decreed to be the legal owner of said premises; that the conveyance from the plaintiff to the defendant be decreed void and of no force and effect; that the defendant be required to make, execute and deliver to plaintiff a deed of conveyance of the premises, or that some person be appointed by the court to do it for her.

The plaintiff died upon the day the complaint was filed, and thereafter the present appellants, as his heirs, were substituted as plaintiffs.

The defendant filed a demurrer to the complaint, which was overruled, and she then answered, setting forth five separate defenses, as follows: (1), That the cause of action accrued, if at all, more than five years previous to the commencement of the action; (2), That the cause of action accrued, if at all, more than three years previous to the commencement of the action; (3), Denial of all the allegations of the complaint, with respect to any alleged trust agreement to reconvey the premises, or redeliver the deed, etc.; alleged that the deed was absolute, made, executed and delivered for a good and valuable consideration; denied allegations as to original plaintiff's alleged illness at the time, or as to his continuing in possession of the premises; (4), Alleged that defendant had never entered into any contract or agreement in writing with respect to the matters alleged in the complaint, and that plaintiff's cause of action was barred by the statute of frauds; (5), That ever since the execution and delivery of the deed,

defendant had been in possession and operation of the premises, etc.; that plaintiff was guilty of laches, and was estopped, etc.

Plaintiffs' reply to the answer denied that either statute of limitations pleaded had any application to the facts set forth in the complaint; denied certain of the allegations of the third defense; and ''for a replication to the further and fourth defense of said answer, plaintiffs say that the allegations thereof do not set forth facts sufficient to constitute any defense, or element of a defense, to any of the allegations in said complaint, and that the same are not material, nor in any way responsive to any allegations of the complaint.'' ''And, for a replication to the fifth defense of said answer,'' the allegations thereof are substantially denied, and the replication thereto closes with these words: ''Plaintiffs, further replying, deny each and every allegation in the answer contained not herein and hereby expressly admitted, traversed or denied.''

Upon the day of trial, and before evidence taken, defendant orally moved for judgment on the pleadings, which was sustained and judgment entered accordingly, from which this appeal is prosecuted.

There is a sharp conflict between the parties as to the nature of the cause of action. Defendant maintains that it seeks to establish, by verbal agreement, an express trust in real estate, contrary to the statute of frauds; and that, in any event, it being for the purpose of establishing a trust, or for relief on the ground of fraud, is barred by either the five or three-year statute of limitations, which she claims the pleadings show had fully run before the suit was instituted; while the plaintiffs contend that the sole purpose of the suit is to remove from their title a cloud consisting of a recorded deed, absolute in form

but of no force and effect, for various reasons which they assign; and further, if its object be to establish a trust in real estate, the pleadings are sufficient for that purpose, and neither statute of limitations applies.

The motion for judgment was based upon the statute of frauds, the contention of defendant in that respect being that the language of the complaint implies that whatever promise was made with respect to the redelivery of the deed, or reconveyance of the premises, was verbal, and not in writing. It is pointed out that the complaint alleges that, "upon her, said defendant's, solemn promise and undertaking to redeliver the same to this plaintiff in the event of his recovery, etc., * * * plaintiff delivered the same to the defendant, in trust only, she, the defendant, promising this plaintiff, at the time of such delivery," etc., and it is claimed that such language shows clearly that the agreement was not in writing. We are unable to say that the language quoted can have no other meaning than that ascribed thereto by defendant. Every agreement to do a thing is a promise, whether in writing or otherwise. A promise may be a contract, a pact, or an agreement, and the word "undertaking" is, perhaps, stronger, for it implies "entering into stipulation." —Webster's New International Dictionary. Assuming that the "promise" and "undertaking" relate to an interest in land, it was unnecessary, as frequently held by this court, to aver that the same was in writing. The complaint does not affirmatively show that the promise or undertaking was not written, and, therefore, is not vulnerable to the statute of frauds. That statute "has changed the rule of evidence, not the rule of pleading."—*Tucker v. Edwards,* 7 Colo. 209; *Garbanati v. Fassbinder,* 15 Colo. 535; *Ruth v. Smith,* 29 Colo. 154.

As the provisions of the statute of frauds affect only the rules of evidence, and not those of pleading, it was unnecessary to aver that the contract declared on was in writing, as its character in that respect must be presumed until the contrary appears.—9 Ency. of Pl. & Prac., p. 700.

Defendant, however, further contends that, as her fourth defense alleges, that she never made or entered into any agreement whatsoever in writing to redeliver the deed, or to reconvey the premises, or to hold the same in trust or otherwise, and the plaintiffs having specially replied thereto by allegations which constitute, in effect, only a general demurrer, they thereby admitted that the promise or undertaking was not in writing. As the language of that defense was no more than a denial of the allegations of the complaint in that respect, no replication was necessary. The defense in no sense constituted new matter, as the complaint, under the rules of pleading, must be construed as though it actually alleged that the promise and undertaking were in writing. Where, as in this case, the presumption is that the promise or agreement was in writing, the presumption stands in the place of the allegation to that effect, and an answer averring that it was not in writing is, in effect, but a denial of the presumption; hence, upon principle, as complete an issue was formed as would have been, had the complaint alleged that such promise was in writing, and such allegation been met by specific denial in the answer. Analogous in principle, and supporting the rule here announced, are the following: *Alden v. Carpenter*, 7 Colo. 87, 92; *Schecter v. White*, 41 Colo. 219. It is proper to state that this holding in no wise militates against the rule that the statute of frauds, if relied upon in defense, must be specially pleaded.

The opinion of the court eliminated the statute

of limitations, and sustained the motion upon the theory that the action had for its purpose the establishment of an express trust, and was barred by the statute of frauds. As to whether plaintiffs intended to rely solely upon parol evidence, we are not advised by the pleadings, and we cannot assume such intention in that respect. Especially so, when they assert, in their argument, that they had "ready to produce on the trial, letters passing between the parties, in which defendant states her understanding of the agreement," proving that there was such a trust. —*Waterbury v. Fisher,* 5 Col. App. 362, 372. The trial court, therefore, erred in sustaining the motion upon the ground assigned.

Conceding that the judgment was rendered on the theory that the statute of frauds prevented the prosecution of the suit, defendant, nevertheless, contends that the action was barred by the statute of limitations, and maintains that the judgment should be affirmed upon the well-established principle that the appellate or reviewing court will not reverse a judgment which is clearly right. If the judgment rests upon a sound principle of law, if the pleadings show that the losing party could not have succeeded upon any theory, the judgment must be affirmed, although it was based by the court below upon an unsound principle.—*Little Pittsburg, etc., v. Little Chief Co.,* 11 Colo. 223, 229; *Home Ins. Co. v. R. R. Co.,* 19 Colo. 46; *Henry v. McNealey,* 24 Colo. 456, 458; *Sullivan v. Iron Silver Min. Co.,* 143 U. S. 214, 215.

It, therefore, becomes necessary to determine whether the action was barred by either statute of limitations pleaded; and to apply the statutes of limitation or test the cause of action thereby, it is essential to first determine what the cause of action is.

(29)

The deed, on its face, is sufficient to convey absolutely and unconditionally the premises in controversy, and to vest in the grantee the present title thereto. The grantor, the plaintiff herein, with full knowledge of the terms of the deed, voluntarily placed it, as he alleges, in the actual possession and under the control of the grantee, the defendant herein. These facts are undisputed, but plaintiff insists that the delivery was not effectual, because it was not his intention that the deed should be recorded, or become operative as a conveyance until his death, and in the event he did not die from the illness from which he was then suffering, the deed was to be returned to him, or, at his option, the premises reconveyed.

Plaintiffs argue that they do not seek to escape the force of the word "delivered," when used technically, and maintain that, as used in the complaint, it does not imply the solemn delivery from force of which act alone the deed can take effect. The exact meaning of a word or phrase, or the force and effect thereof, must be determined by the society in which the word or phrase is found; and, applying that rule to the language of the complaint, it is clear beyond cavil that the action was brought to establish a decree that a deed, absolute upon its face, was "delivered" to the grantee in trust for certain uses and purposes. It is alleged that, upon "defendant's solemn promise and undertaking to redeliver" the deed in event of the plaintiff's recovery from his then sickness, and "not to place the same of record, unless, in the event of the death of this plaintiff, he, the plaintiff, delivered the same to the defendant in trust only, she, the defendant, promising this plaintiff at the time of such delivery that if this plaintiff got better and did not die, she, the defendant, would convey back the said premises to this plaintiff on

demand, or deliver back to plaintiff said deed, as he, this plaintiff, might elect,'' and that said ''defendant held said premises under said conveyance in trust for the plaintiff.''

The fair meaning of the language of the complaint is, that the grantor delivered an absolute deed, reciting a consideration, to the grantee, with the understanding that, if the former did not presently die, the latter would, upon demand, redeliver the deed to the grantor, or, at his election, reconvey the premises. The deed, having been placed in the possession and under the manual control of the grantee as the deed of the grantor, took effect at once, and vested the legal title in the former.—*Stevenson v. Crapnell*, 114 Ill. 19. Plaintiffs admit such a complete delivery that, had the grantor presently died, defendant would have been the owner of the property. Were we to assume that the deed was delivered upon condition not to take effect unless the grantor therein presently died, still it was a delivery as the deed of the grantor, and, being to the grantee, the latter's holding in law was unconditional, and the deed took effect presently. — *McClendon v. Brockett*, 32 Tex. Civ. App. 150. It is uncontroverted that the deed was intended to take effect on the happening of a particular event—the death of the grantor—and if the grantee agreed to hold the deed, it was in trust to await the happening of that event; or, if the event did not presently happen, to return the deed or reconvey the premises. It is clear, in either case, that such holding would make the deed an escrow, if the delivery had been to a stranger. But the law is, that ''a deed cannot be delivered to the grantee as an escrow. If it be delivered to him, it becomes an operative deed, freed from any condition not expressed in the deed itself, and it will vest the title in him, though this may be contrary to the

intention of the parties.''—1 Devlin on Deeds, § 314. And this court has heretofore announced the same principle in *Larsh v. Boyle,* 36 Colo. 18, 23, where we said: ''The doctrine is elementary that there can be no conditional delivery or delivery in escrow by the grantor to the grantee in a deed. Such conditional delivery must be to a stranger, and not to a party to the transaction.''

In *Darling v. Butler,* 45 Fed. 332, it is said:

''That when the deed was originally delivered, the parties did not intend that the defendant should acquire the legal title to the land. They treated the deed merely as documentary evidence of title, and erroneously assumed that, notwithstanding its delivery to the defendant, and its acceptance by him, the legal title would not pass until he should convey the land to some other person, or record the deed; and, in case neither of these things were done, that by returning the deed to the plaintiff the title of the latter would remain as though he had never executed the deed. This misconception of the legal effect of the transaction could not, however, alter the fact that there was a delivery of the deed, and an acceptance, by which the defendant acquired the legal title of the land, and so effectually that he could only divest himself of it by a reconveyance. The rule is ancient and familiar that a deed cannot be delivered in escrow to the grantee. When there is a valid delivery of a deed by the grantor to the grantee, it is impossible to annex a condition to such delivery; and the delivery vests the title in the grantee, although it may be contrary to the intention of the parties.''

''If I seal my deed, and deliver it to the party himself to whom it is made, as an escrow upon certain conditions, etc., in this case, let the form of the words be what it will, the delivery is absolute, and

the deed shall take effect as his deed presently."
—Shep. Touch., 59.

In *Hubbard v. Greeley,* 84 Me. 340, 344, it is said:

"An escrow is a deed delivered to a stranger, to be delivered by him to the grantee upon the performance of some condition, or the happening of some contingency, and the deed takes effect only upon the second delivery. Till then, the title remains in the grantor. And if the delivery is, in the first instance, directly to the grantee, and he retains the possession of it, there can be no second delivery, and the deed must take effect on account of the first delivery, or it can never take effect at all. And if it takes effect at all, it must be according to its written terms. * * * It will, therefore, be seen that a delivery to the grantee himself is utterly inconsistent with the idea of an escrow. And it is perfectly well settled, by all the authorities, ancient and modern, that an attempt to thus deliver a deed as an escrow cannot be successful; that in all cases where such deliveries are made, the deeds take effect immediately and according to their terms."

The rule announced by Washburn, in his work on Real Property, vol. 3, pp. 292-3, cited by plaintiffs, to the effect that it is an essential prerequisite that a deed should be understood by the parties to be completed and ready for delivery, in order to have a mere placing of it in the hands of the grantee, construed into a delivery, in no wise militates against the doctrine we here announce, but rather confirms it. Wherein was the deed in question incomplete, or not ready for delivery? Every act essential to a valid deed had been performed, and the complaint alleges that the deed was delivered. The contention that the parties did not intend the deed to take effect according to its terms, but upon some condition not

expressed in the instrument, does not involve the question of delivery. Nondelivery, when pleaded, may be shown by any proper evidence, whether written or parol, but the nature of the cause of action must be determined by the deed, its effect, and the allegations of the complaint.

*Denis v. Velati*, 96 Cal. 223, 227, and *Black v. Sharkey*, 104 Cal. 279, cited by plaintiffs, have no similarity to the case at bar, and are not in point. Those cases are predicated upon the proposition that whether a deed has been delivered may be proven by parol. The former case is where a plaintiff, expecting presently to die, made a deed in place of a will, to avoid probate; placed the deed in grantee's hands for the purpose of enabling the latter to prove the validity of the deed. After the acknowledgment of the deed, plaintiff retained it in his possession until it was wrongfully taken by the grantee during the grantor's illness, without the latter's knowledge, etc.; and, moreover, there is a specific allegation in the complaint that the deed was never delivered to defendant. In the *Black-Sharkey* case, *supra*, language is used that would indicate the view that evidence might be introduced to prove that the parties did not intend the deed should take effect according to its terms. It should be observed, however, that the question under consideration, and the only one decided, was, whether parol evidence might be introduced to show that the deed which had been duly executed and was found in the possession of the grantee, had ever been, in fact, delivered. We understand the holding of that case to be, and such is the syllabus, that "while the possession of a deed by the grantee is *prima facie* evidence that it was delivered by the grantor with intent that it should take effect according to its terms, yet such possession is not conclusive evidence of a valid delivery; and it

may be shown by parol evidence that a deed in the possession of the grantee was not delivered.''

· The complaint before us not only fails to plead nondelivery of the deed, but it specifically alleges delivery thereof. We are unable to ascribe any other meaning to the language used. There was no condition expressed in the deed. It was delivered to the grantee as the deed of the grantor, and took effect as the latter's deed. The question of delivery is not an issue in this case.

In *Mowry v. Heney,* 86 Cal. 471, it is said: ''When an absolute deed has been delivered to the grantee, the title becomes vested free from any conditions, and its operation cannot be defeated by parol proof of an intention on the part of the grantor, known to the grantee, that it should not take effect except in the event of the grantor's death; nor is parol evidence admissible to show that the delivery of the deed to the grantee was subject to any condition not expressed therein.'' The alleged non-consideration for the deed, continued uninterrupted possession of the premises by the grantor, the payment of taxes and the development of the property by him and his lessees, can in no wise overthrow the fact that the deed was delivered to the grantee and thereby became, and was, effective according to its terms, whatever effect such matters may have upon other features of the case. Assuming the affirmative of each allegation, it in no sense changes the nature of the cause of action. It remains the same—an action to establish a trust in real estate not cognizable by the courts of common law, and this appears to be true whether it be an express or a resulting trust. —2 Mills' Ann. Stats., § 2912; *Steinbeck v. Bon Homme M. Co.,* 152 Fed. 333, 344.

It is, therefore, unnecessary to consider the discussion of either counsel as to whether the allega-

tions of the complaint set forth an express or a resulting trust. In either event, the cause of action would be the same in so far as affected by the statute of limitations.

Being of the opinion that the allegations of the complaint clearly show the legal title to the premises in controversy to be vested in the defendant, and that the purpose of the suit is to establish a trust in real estate not cognizable by the courts of common law, it is unnecessary to consider other propositions discussed by counsel, as they can have no bearing upon the case. It only remains to determine whether the pleadings clearly show that the action is barred by the statutes of limitation. If the cause be not so barred, the judgment must be reversed that plaintiffs may have an opportunity to establish the trust by proper evidence, if they can. Under section 2912, Mills' Ann. Stats., the suit must have been commenced within five years after the cause of action accrued.

The deed was executed and delivered December 25, 1897, and this action brought December 31, 1904. The complaint alleges that, "on many occasions during the earlier part of the year 1899," plaintiff "requested the said defendant to deliver to plaintiff such deed in keeping with her promise and agreement as aforesaid made and entered into, to and with this plaintiff, or to reconvey to said plaintiff said premises; but that said defendant utterly neglected and refused so to do, and on the 8th day of May, 1899, duly filed said deed for record," etc. These acts unquestionably gave the plaintiff a right of action presently, and necessarily set in motion the statute of limitations.

In *French v. Woodruff*, 25 Colo. 339, 351, it is said: "In this class of trusts (express or resulting), no right of action accrues unless the trust is repudi-

ated in some way, and knowledge thereof brought home to the *cestui que trust.*" A cause of action of this character accrues when the trust is repudiated, and plaintiff has knowledge thereof.—25 Cyc., 1169, 1170.

In the case at bar, it seems clear that defendant repudiated the trust and refused to execute the same, to plaintiff's certain knowledge, more than five years before the commencement of the action. The answer pleaded both the three- and five-year statutes of limitation, and though the replication denied "that either statute of limitations had any application to the facts set forth in the complaint," yet, inasmuch as the complaint alleged that "on many occasions during the earlier part of the year 1899" plaintiff "requested the said defendant to deliver to plaintiff such deed in keeping with her promise and agreement, * * * or to reconvey to said plaintiff said premises; but that said defendant utterly neglected and refused so to do, and on the 8th day of May, 1899, duly filed said deed for record," it seems that thereby the particular time when the defendant repudiated the trust, was fixed at a date more than five years prior to the institution of the suit. We are persuaded that the fair meaning of the language used is, that prior to the 8th day of May, 1899, the defendant repudiated the trust, if one existed, and the knowledge of such repudiation was brought home to the plaintiff. The substantial effect of these allegations was, that thereby, in the complaint, the particular date was given when the defendant repudiated the trust, thus fixing the date the cause of action accrued. It was, under such circumstances, in effect, as though the replication had set forth the particular date when the cause of action accrued, and followed the same with the allegation that the statutes of limitation had no application. This would

be, in effect, a legal conclusion; and when, from the very facts alleged, such conclusion cannot follow, the court must ascribe the proper conclusion. When the pleadings are considered together, it is clear that the cause of action accrued more than five years previous to the commencement of the suit, and the five-year statute of limitations having been pleaded as a bar, the judgment on the pleadings was proper upon the whole record. The plaintiffs could not have succeeded upon any theory supported by the complaint. The judgment is, therefore, affirmed.     *Affirmed.*

CHIEF JUSTICE CAMPBELL and Mr. JUSTICE BAILEY concur. ————————